**Fay M. KLINE, Plaintiff,**

v.

**Emanuel L. WOLF, Jay N. Feldman, C. Ray Holloway, William V. Lurie, Carl Prager, Julio Proietto, Jack M. Sattinger and Price Waterhouse & Co., Defendants.**

**Paul BLOCK, Plaintiff,**

v.

**Emanuel L. WOLF, Jay N. Feldman, C. Ray Holloway, William V. Lurie, Carl Prager, Julio Proietto, Jack M. Sattinger and Price Waterhouse & Co., Defendants.**

**80 Civ. 2221, 80 Civ. 2364.**

United States District Court,
S. D. New York.

Jan. 14, 1981.

Kass, Goodkind, Wechsler & Labaton, New York City, for plaintiff Fay M. Kline.

A. Arnold Gershon, New York City, for plaintiff Paul Block; Stuart D. Wechsler, Joseph Sternberg, New York City, of counsel.

Jacobs, Persinger & Parker, New York City, for defendants Wolf, Feldman, Sattinger & Lurie; Irving Parker, Joseph N. Salomon, William Lasher, New York City, of counsel.

Richards, O'Neil & Allegaert, New York City, for defendant Proietto.

Davis, Polk & Wardwell, New York City, for defendant Price Waterhouse & Co.; Bartlett H. McGuire, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

These are actions by Fay M. Kline and Paul Block, plaintiffs in two consolidated actions, that they be certified as representatives in a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The class sought to be represented is all purchasers of shares of stock in Allied Artists Industries, Inc. ("Allied") for the period August 18, 1978 to April 4, 1979. The gist of the claim is that the defendants, officers and executives of Allied and its independent auditors, caused Allied to issue false

and misleading statements concerning Allied's earnings, its financial condition, its imminent insolvency, and its inadequate accounting procedures, and that the alleged misstatements and omissions were not made known to the public but were concealed until April 4, 1979 when Allied and two of its wholly-owned subsidiaries filed Chapter XI petitions under the Bankruptcy Act. The allegations of misrepresentations and omissions are based upon Allied's 1978 Annual Report, which included financial statements for the fiscal year ended March 31, 1978. The members of the purported class are those who purchased Allied shares in the period between August 18, 1978 when Allied's 1978 Annual Report was published and April 4, 1979 when upon the filing of the Chapter XI petition its financial condition became known. Plaintiffs contend that they relied on the allegedly misleading statements in that Report and on the integrity of the market price of the stock. Plaintiffs seek to recover on behalf of the class for losses allegedly sustained in purchasing Allied shares at prices artificially inflated as a result of these statements.

After plaintiffs moved for class certification, the defendants were afforded the opportunity to depose the plaintiffs with respect to their qualifications to act as class representatives. Based upon testimony given during the course of these depositions, and upon various affidavits and documents, the defendants oppose the motion for class certification on several grounds including that neither plaintiff qualifies as an adequate representative under the Rule in that each plaintiff is subject to unique defenses that will unnecessarily prejudice the class' probability of success—in short, that the facts show each plaintiff in purchasing Allied shares relied primarily upon considerations or sources independent of Allied's 1978 Annual Report or the integrity of the market.

Preliminarily, it is noted that a similar action commenced by one Zelda L. Panzirer was denied class certification by Judge Motley upon the grounds here advanced by defendants.[1] Thereafter, Judge Motley granted the defendants' renewed motion for summary judgment and dismissed the Panzirer complaint.[2] Plaintiff Block's motion to intervene in that action was denied.[3] These two actions were commenced within days after the dismissal of the Panzirer suit. Each complaint in this consolidated action tracks almost *in haec verba* the complaint of the dismissed Panzirer action. Each plaintiff, however, purports to see factual distinctions in his or her individual status as compared to Panzirer; accordingly, the situation of each plaintiff is considered.

*Plaintiff Paul Block*

Block made his first purchase of Allied shares on July 12, 1978, more than a month prior to the date the Allied Annual Report was published, and two months before it was mailed to its shareholders of record on September 8 and 11, 1978. He testified that Allied stock first came to his attention when he read articles in the May 24 and June 14, 1978 issues of *Variety* referring to Allied's efforts to enter the video cassette business, whereupon he called his broker, Sol Hitzig, who sent him a copy of Allied's 1978 Annual Report, following which he made his first purchase in July 1978. He was positive that it was the 1978 Annual Report that he had read, even recalling its colors which differed from those of the previous years. This testimony, to say the least, is implausible; it is contradicted by the undisputed fact that the Report, although dated August 18, 1978, was not mailed to shareholders of record until September 8 and 11, 1978. Moreover, his broker submitted an affidavit wherein he denies he sent any such report to Block. Thus defendants make a strong argument that Block's July 12, 1978 purchase could not

1. *Panzirer v. Wolf,* [1979–80 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 97,251 (S.D.N.Y. Jan. 17, 1980).

2. *Panzirer v. Wolf,* [1979–80 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 97,363, at 97,435–37 (S.D.N.Y. April 21, 1980).

3. *Id.* at 97,437.

have been made in reliance upon the 1978 financial statement, but was motivated by the *Variety* articles. Block later purchased 200 Allied shares on September 13 and 500 shares on September 14, but sold his accumulated 1,000 shares (including his July purchase) on September 18, 1978, approximately ten days after he first could have seen the Annual Report. The defendants again challenge Block that as to the later transactions he saw or relied on the Report. The defendants stress that Block bought and sold Allied shares through October 1978, up to the end of the class period on April 4, 1979, and even thereafter on May 7, 1979—in short, that his trading in the stock was without regard to Allied's 1978 Annual Report or its effect on the market. Defendants point, for example, to Block's testimony that an October 26 purchase was made after he had read another article in *Variety* which indicated that "The Wild Geese," a movie distributed by Allied, "seems to be doing pretty well," which they urge as further proof that Block did not rely on Allied's 1978 Annual Report but upon the *Variety* article. In sum, the defendants contend that considerations entirely independent of the 1978 Annual Report, such as Block's belief that a price drop was due to profit taking and his desire to "average-down" the per-share value of his stock, were the sole factors that led to his trading activity in the stock.

Whatever the merits of these contentions, Block's deposition testimony subjects him to a severe attack upon his credibility particularly insofar as his claim is predicated upon reliance on defendants' 1978 financial report or on the market's integrity. The testimony adduced gives strong support to the defendants' position that he was a speculative trader in the Allied stock and that his purchases and sales did not depend upon either the financial statement or the market's reaction thereto. Thus Block would be subject to "unique defenses" on the issue of reliance inapplicable to other purported class members which vitiates the typicality of his claim.[4] The Court does not pass upon Block's credibility but it is clear that he is exposed to a sharp attack on the verity of his statement that he saw the 1978 Annual Report when he made his initial purchase in July and his claim that he relied upon the integrity of the market. Thus this attack upon Block, based upon issues different from those of individual reliance usually present in suits of this type, if successful, may imperil a recovery in favor of the class. The members of the class are entitled to representatives unencumbered by "unique defenses." While one may question the defendants' professed concern for members of the class, they have a legitimate interest in contesting plaintiffs' qualifications to speak for members of the class.[5] The record here warrants a finding that under all the circumstances, plaintiff Block does not qualify under Rule 23(a)(4) as a representative who will fairly and adequately protect the interests of the class he seeks to represent.[6]

This disposition makes it unnecessary to consider defendants' additional contentions that for other alleged reasons Block is not an adequate representative of the class or that the consolidated action does not qualify for class certification.

*Plaintiff Fay M. Kline*

Plaintiff Fay M. Kline, herself, had little to do with the purchases of Allied shares in her name; they were handled by her husband. Contrary to the allegations in her complaint that she relied upon the 1978 Annual Report in purchasing the shares, she testified upon her deposition that she did not buy in reliance thereon, that she had no

---

4. *Zenith Laboratories, Inc. v. Carter-Wallace, Inc.*, 530 F.2d 508, 512 (3d Cir.), *cert. denied*, 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976); *Koos v. First Nat'l Bank*, 496 F.2d 1162, 1164–65 (7th Cir. 1974); *Sicinski v. Reliance Funding Corp.*, 82 F.R.D. 730, 733–34 (S.D.N.Y.1979); *Greenspan v. Brassler*, 78 F.R.D. 130, 132 (S.D.N.Y.1978).

5. *Gonzalez v. Cassidy*, 474 F.2d 67 (5th Cir. 1973).

6. *Weisman v. Darneille*, 78 F.R.D. 669, 671 (S.D.N.Y.1978).

knowledge of Allied's financial condition prior to her purchases, and that she bought solely on the recommendation of her husband. She declined on the advice of her counsel to answer critical and relevant questions as to whether she would have purchased Allied shares had she known of information contained in the Annual Report. These questions were within the scope of permissible discovery and were relevant to the subject matter of the action. This failure to comply with proper discovery inquiry may be considered on the issue as to whether a class representative lives up to his fiduciary obligation.[7]

Thus we turn to the testimony of her husband, William W. Kline. He testified that his decision to purchase the Allied stock was "based solely on the statement of August of '78 . . . that Allied issued" but acknowledged that he never saw the statement. He continued that he relied upon his broker's judgment insofar as the broker knew of that company "after [the 1978 Annual Report] was issued." However, his testimony was contradicted by the broker who testified that he did not recommend Allied, that he had never read the 1978 Annual Report, that he did not tell Mr. Kline that Allied had good potential or good earnings prospects, and that he had not made any statement to Mr. Kline about Allied's performance.

■ A class or derivative action representative serves as a fiduciary to advance and protect the interests of those whom he purports to represent; their interests are entrusted to the fiduciary's diligence and industry and the successful protection of the class claims depends upon his integrity.[8] Fay M. Kline's claim of reliance upon the 1978 Annual Report through her husband is disputed by their own broker, which at once raises an unnecessary and vulnerable issue of their credibility to which the ultimate interest of the purported class should not be subjected. In this instance too, the Court does not undertake to resolve the issue of credibility but notes its existence and its potential adverse impact upon the class interest. This cannot be ignored.

■ The parties' lengthy briefs have in large measure centered about the merits of their respective claims. Thus much attention is given to the subject of materiality. However, the merits of the case are not the issue before the Court. It is recognized that reliance is presumed once the materiality of an omission is established or the material misrepresentation affected the price of the stock traded in the market—but the presumption is rebuttable.[9] This Court's holding is directed to the issue of whether plaintiffs' credibility, affording defendants the opportunity to raise unique defenses, unduly burdens the class by rendering plaintiffs' claims atypical of the claims of all class members.

In sum, the unique defenses to which each plaintiff is subject, could become, as they already have, the focus of the litigation and upon a trial, divert attention from the substance of the basic claim. The remaining members of the class could be severely damaged by plaintiffs' representation of them. The respective claims of plaintiffs that their purchases of Allied stock were in reliance upon the integrity of the market and the Allied financial statement are subject to just such a challenge as to render their claims atypical of those of other members of the class.[10]

7. *Norman v. Arcs Equities Corp.*, 72 F.R.D. 503, 506 (S.D.N.Y.1976); *cf. Rossini v. Ogilvy E. Mather, Inc.*, 80 F.R.D. 131, 135 (S.D.N.Y. 1978); *Hernandez v. United Fire Ins. Co.*, 79 F.R.D. 419, 426 (N.D.Ill.1978).

8. *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 549, 69 S.Ct. 1221, 1227, 93 L.Ed. 1528 (1949); *Weisman v. Darneille*, 78 F.R.D. 669, 671 (S.D.N.Y.1978).

9. *Cf. Ross v. A. H. Robbins*, 607 F.2d 545, 553 (2d Cir. 1979); *Blackie v. Barrack*, 524 F.2d 891, 906–07 (9th Cir. 1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *In re LTV Securities Litigation*, [Current Binder] Fed.Sec.L.Rep. (CCH) ¶ 97,605, at 98,230–31, 88 F.R.D. 134 (N.D.Tex.1980).

10. *Zenith Laboratories, Inc. v. Carter-Wallace, Inc.*, 530 F.2d 508, 512 (3d Cir.), *cert. denied*, 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976); *Koos v. First Nat'l Bank*, 496 F.2d 1162, 1164–

The motion for class certification is denied.

65 (7th Cir. 1974); *Sicinski v. Reliance Funding Corp.*, 82 F.R.D. 730, 733–34 (S.D.N.Y.1979);

*Greenspan v. Brassler*, 78 F.R.D. 130, 132 (S.D.N.Y.1978).