Douglas C. **LANDRY, Paul C. Elliot, Daniel L. Rumelt, Kathie J. Class, Mitch Goldenberg, Samuel Friedman, Max Prager, Paul Englander and Fred Ex, Plaintiffs,**

v.

**PRICE WATERHOUSE CHARTERED ACCOUNTANTS and Price Waterhouse, Defendants.**

**PRICE WATERHOUSE CHARTERED ACCOUNTANTS, Third–Party Plaintiffs,**

v.

Richard J. **BALL, Donald W. Reid, Marc R. Reid, Joseph Seguin, Gerald Brandman, Ronald Chisholm and Calgroup Graphics Corporation Ltd. Third–Party Defendants.**

87 Civ. 727 (DNE).

United States District Court,
S.D. New York.

Jan. 10, 1989.

Joseph J. Tabacco, Jr., New York City, for plaintiffs.

Olwine, Connelly, Chase, O'Donnell & Weyher, New York City (James Tolan, of counsel) for defendants.

## MEMORANDUM AND ORDER

EDELSTEIN, District Judge:

This action is one arising from an alleged fraud involving Calgroup Graphics Corporation, Ltd. ("Calgroup"), its directors and officers and Price Waterhouse Chartered Accountants ("Price Waterhouse Canada") and Price Waterhouse–US.[1] The alleged fraud centers on a transaction between Gowganda Resources Inc.[2] and Reid Entertainment Corporation ("REC") in which Gowganda acquired REC's film properties in exchange for common stock. Subse-

---

1. Price Waterhouse–US has been dismissed without prejudice as a defendant and is no longer a party in this action.

2. After the transaction, Gowganda changed its name to Calgroup Graphics Corporation Ltd.

quently, this transaction resulted in an issuance of allegedly misleading financial statements of the newly named Calgroup Graphics Corporation Ltd. ("Calgroup"), reported on by Price Waterhouse Canada ("PWC"), which artificially inflated the price of Calgroup stock. The named plaintiffs seek to represent the class of individuals who purchased Calgroup stock in reliance on the integrity of the market and defendant's allegedly false and misleading statements.[3]

Seven[4] putative class members purportedly represent a class consisting of:

All persons who purchased the common stock of Calgroup Graphics Corporation, Ltd. on the open market during the period April 1, 1985 through September 23, 1985, and who were damaged thereby, excluding present and former officers, directors and employees of Calgroup and also excluding all partners, agents, employees, and their immediate families of Price Waterhouse and Price Waterhouse Chartered Accountants.

Plaintiffs have now moved this court for class certification. Defendant PWC opposes class certification on the following grounds: (1) the named plaintiffs are not typical of the proposed class of purchasers of Calgroup common stock; (2) the named plaintiffs are not adequate representatives of the proposed class; (3) individual questions predominate over common questions of law and fact; (4) plaintiffs have failed to define a proper class which can be certified by this court; and (5) plaintiffs have failed to meet their burden of demonstrating that the members of a properly defined class are too numerous for joinder.

Certification pursuant to Rule 23 initially requires consideration of the four requirements of Rule 23(a), namely, numerosity of class members, commonality of questions of law and fact, typicality of the claim and adequacy of representation. Although the numerosity[5] and commonality[6] requirements appear to be established, defendant PWC raises serious questions as to whether the named plaintiffs are typical of the entire class.

### Typicality

Defendant asserts that each of the seven named plaintiffs is subject to unique defenses which will become the focus of this action, thereby prejudicing absent class members. *Lewis v. Johnson,* 92 F.R.D. 758, 760 n. 1 (E.D.N.Y.1981); *Weintraub v. Texasgulf, Inc.,* 564 F.Supp. 1466, 1471 (S.D.N.Y.1983); *Greenspan v. Brassler,* 78 F.R.D. 130 (S.D.N.Y.1978).

In support of their Motion for Class Certification, plaintiffs simply assert that their claims are typical of those of the class because, like the absent class members, they purchased Calgroup stock in reliance on the integrity of the market and defendant's false and misleading statements. Defendant contends that each of these plain-

---

**3.** At a hearing on September 28, 1988 the full facts were set forth by all parties. That record is deemed incorporated by reference.

**4.** Two of the nine originally-named plaintiffs, Paul Englander and Kathie Class, Daniel Rumelt's wife, were voluntarily dismissed as class representatives by stipulation and order on January 12, 1988.

**5.** An excess of one million shares of Calgroup were traded during the period in question rendering joinder of shareholders impractical. *See e.g., Korn v. Franchard Corp.,* 456 F.2d 1206, 1209 (2d Cir.1972). Although defendant argues

that the subject matter jurisdiction of this court is limited to United States residents who purchased Calgroup on domestic exchanges, thereby decimating the number of potential plaintiffs, this would not prevent satisfaction of the numerosity requirement of Rule 23.

**6.** Rule 23(a)(2) requires that there be questions of law or fact common to the class. It does not require that all questions of law or fact be common. This court is satisfied that there are common issues of law and fact at stake here.

tiffs is atypical because each purchased Calgroup stock based on non-public information and recommendations from friends and associates, not on the statements of PWC or the integrity of the market. *See Lipton v. Documation*, 734 F.2d 740 (11th Cir.1984), *cert. denied*, 469 U.S. 1132, 105 S.Ct. 814, 83 L.Ed.2d 807 (1985); *Wilson v. Comtech Telecommunications Corp.*, 648 F.2d 88, 92 (2d Cir.1981); *Greenspan*, 78 F.R.D. at 132–33.

Defendant PWC alleges that plaintiffs Friedman and Prager are atypical of the class they seek to represent and will be faced with unique defenses concerning their lack of reliance on either PWC or the integrity of the market. Friedman had access to information from Gerald Brandman, a director of Calgroup.[7] Prager also received information from Brandman, via Friedman. Whether the information to which these individuals had access would be relevant to a decision to purchase Calgroup securities, and whether plaintiffs actually relied on such information in their decision to purchase, are difficult factual questions which cannot be resolved at this stage of the litigation. However, whether these defenses will be successful is of no matter. The fact that plaintiffs will be subject to such defenses renders their claims atypical of other class members.

Defendant further alleges that plaintiffs Ex, Elliot and Rumelt bought their stock based on non-public information from business associate Barbara Atlas, who in turn received the information from Calgroup director, Donald Reid. At the time of their conversations with Atlas, she was in contact with Reid and, by virtue of her plans to be employed by Reid and her company to be bought by Reid once he acquired control of Gowganda, she had a personal stake in the continued success of the Company. (Elliot Tr. at 70–71; Tolan Aff. ¶ 24, Exh. 22). The testimony of each of these three plaintiffs makes clear that they will be faced with unique defenses concerning

their purchases of Calgroup stock. Each of these plaintiffs would be required to devote considerable time to rebut the claim that their purchases were based not on the integrity of the market, but on non-public information that they received from Atlas and Reid. Clearly, this situation would prejudice absent class members. *Cohen v. Laiti*, 98 F.R.D. 581, 583–84 (E.D.N.Y.1983) (the court refused to certify class where plaintiff's investment decisions were based on tips supplied by friends and associates); *Greenspan*, 78 F.R.D. at 132 (this court refused to certify class where plaintiffs relied on a recommendation from their brother a professional investor).

Defendant PWC spends considerable time arguing the unique defenses which plaintiff Landry faces. It is unnecessary for the court to address defendant's arguments because at the September 28, 1988 hearing, plaintiffs' counsel conceded that Landry was an unfit representative of the class. (Sept. 28, 1988 Hearing Tr. at 55).

Plaintiff Goldenberg testified that he bought his shares in Calgroup at the recommendation of his father-in-law whose barber had recommended Calgroup. Goldenberg's testimony that he relied on the financial statements in the Annual Report in making his purchase of Calgroup stock on July 30, 1985 is incredible. The Annual Report was dated August 1, 1985 and was not mailed to shareholders until August 7, 1985. (Tolan Aff. ¶¶ 12, Exh. 10). As defendants suggest (Def Memo. in Opposition to Plaintiffs Motion for Class Certification at 33), the only explanation for this discrepancy is that Goldenberg is incorrect[8] or that he received the Annual Report in advance of its public release, thereby becoming a beneficiary of non-public information.

In either event, plaintiff Goldenberg will be faced with defenses unique to him rendering him an improper class representative. *Kline v. Wolf*, 88 F.R.D. 696, 699 (S.D.N.Y.1981) (plaintiff testified that he relied on financial statements which had

---

7. Friedman testified that his greatest source of information was Brandman, and he referred to Brandman as his "conduit" to the company. (Friedman Tr. at 178, 344, 359).

8. In the event Goldenberg is incorrect and therefore did not see the Annual Report, then he could not have relied on the alleged misrepresentations of defendant PWC.

not been issued until after his purchase; this court refused to certify a class finding him to be an inadequate representative), *aff'd in part, vacated in part,* 702 F.2d 400 (2d Cir.1983).

### Adequacy

The typicality prerequisite overlaps with the adequate representation requirement of Rule 23(a)(4). *Dura–Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 99 (S.D.N.Y.1981). As elucidated in the discussion of typicality, *supra,* the named plaintiffs have business and personal entanglements between and among themselves and Calgroup and its management. The purported representatives have conflicting interests which prevent them from adequately investigating and prosecuting this action on behalf of the absent members of this class.

A class action representative serves as a fiduciary to advance and protect the interests of those whom he purports to represent; their interests are entrusted to the fiduciary's diligence and successful protection of the class depends upon the named plaintiff. *Kline,* 88 F.R.D. at 700. The unique defenses to which each plaintiff is subject, could become, as they have already, the focus of the litigation. This result would serve only to divert attention away from the plaintiffs' basic claim: the remaining members of the class could be damaged if the named plaintiffs were to represent them. It is readily apparent that none of these putative plaintiffs is a suitable candidate for class representative in the instant class action. Each of these plaintiffs is atypical and none is an adequate representative of this class. Accordingly, the motion for class certification is denied.

### CONCLUSION

Plaintiffs' motion for class certification is denied.

SO ORDERED.