John BERWECKY and Scott Stackman, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

BEAR, STEARNS & COMPANY, INC., Bear, Stearns Securities Corp. and Richard Harriton, Defendants.

Jack Perry, on behalf of himself and all others similarly situated, Plaintiffs,

v.

Bear, Stearns & Company, Inc., Bear, Stearns Securities Corp. and Richard Harriton, Defendants.

Nos. 97 CIV. 5318(JES), 97 CIV. 6257(JES).

United States District Court, S.D. New York.

Sept. 18, 2000.

Milberg Weiss Bershad Hynes & Lerach (Paul D. Young, of counsel), New York City, for Plaintiffs.

Goodkind Labaton Rudoff & Sucharow (Joel H. Bernstein, Peter E. Zinman, or counsel), New York City, for Plaintiffs.

Finkelstein Thompson & Loughran (Burton H. Finkelstein, William P. Butterfield, Halley F. Sexter, of counsel), Washington, DC, for Plaintiffs.

Schiffrin & Craig (Richard S. Schiffrin, Andrew Barroway, of counsel), Bala Cynwyd, PA, for Plaintiffs.

McElroy, Deutsch & Mulvaney (Louis A. Modugno, of counsel), Morristown, NJ, for Plaintiffs.

Cadwalader, Wickersham & Taft (Dennis J. Block, Jonathan M. Hoff, Anna K. Sils, of counsel), New York City, for Defendants.

Arnold & Porter (Stephen M. Sacks, Scott B. Schreiber, James L. Cooper, Craig Newman, David Weintraub, of counsel), Washington, DC, for Defendants.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

In these consolidated actions alleging various violations of the federal securities laws, Scott Stackman, Jack Perry, Kevin Gillis, Florence and Howard Schubert, L. Neil LeRoy, and Howard Green (collectively "plain-

tiffs")[1], seek to certify the matter as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). Defendants Bear, Stearns & Company, Inc., Bear, Stearns Securities Corp. (collectively "Bear, Stearns"), and Richard Harriton, a former Senior Managing Director of Bear, Stearns Securities, object that plaintiffs have failed to satisfy the prerequisites to certification under Rule 23 because they fail to allege a common scheme and are otherwise subject to unique defenses. For the reasons stated below, plaintiffs' motion for class certification is granted in part and denied in part.

## BACKGROUND

Plaintiffs allege that starting as early as July 20, 1995, Bear, Stearns engaged in a scheme to defraud investors of certain publicly-traded securities when it began acting as a clearing broker for A.R. Baron & Company ("A.R. Baron" or "Baron") and continued until June 28, 1996, when A.R. Baron ceased doing business. *See* Amended and Consolidated Class Action Complaint dated April 1, 1998 ("Am.Compl.") at ¶ 1. As part of the scheme, plaintiffs contend that Harriton and A.R. Baron utilized various and sundry methods to artificially inflate and manipulate the price of the securities[2] that A.R. Baron sold and marketed to members of the general public. *See id.* The methods purportedly employed by defendants to perpetuate the scheme included the refusal to execute cus-

tomer sell orders, the execution of false purchase orders, the fraudulent adjustment of inventory, and the unlawful parking of certain securities. *See id.* at ¶ 80. In addition, plaintiffs allege that defendants unlawfully withheld funds from other investors who sought to participate in the oversubscribed initial public offering of Paperclip Imaging Software, Inc. ("Paperclip") that was underwritten by A.R. Baron.

Plaintiffs assert that throughout the class period Harriton and others at Bear, Stearns shed their role as a mere clearing broker for A.R. Baron, and with actual knowledge, directly participated in the heretofore described scheme. *See* Am. Compl. at ¶ 3. Moreover, plaintiffs allege that after Baron was sanctioned by the National Association of Securities Dealers ("NASD") defendants asserted control over Baron's trading operations by, *inter alia,* placing Bear, Stearns' employees at Baron's offices to observe Baron's trading activities, approving or declining to execute certain trades, imposing restrictions on Baron's inventory, and loaning funds to Baron.[3] *See* Am. Compl. at ¶¶ 44, 49–55. All of this was done, plaintiffs contend, in order to keep A.R. Baron a viable concern while Bear, Stearns and Harriton continued to reap the large profits that they received from their activities with A.R. Baron.

Plaintiffs' proposed class would encompass all persons who purchased the aforemen-

---

1. On September 24, 1999 the Court entered a Stipulation and Order dropping Messrs. Berwecky, Frystock, and Burgess as proposed class representatives.

2. The plaintiffs allege that defendants manipulated the market price of the stock of the following so-called "promoted companies." The "promoted companies" include: Health Professionals, Inc., Cyromedical Sciences, Inc., Cypros Pharmaceuticals Corporation, Innovir Laboratories, Inc., Voxel, Advanced Mammography Systems, Inc., Symbollon, Inc., Aqua Care Systems, Inc., Laser Video Network, Inc., and Paperclip Imaging Software.

3. Plaintiffs contend that further evidence of defendants' knowledge of A.R. Baron's fraud is demonstrated by cash payments received in "brown bags" by A.R. Baron brokers in exchange for making unauthorized purchases of large blocks of stocks on behalf of A.R. Baron's

customers, of which defendants were allegedly aware. The companies whose stocks plaintiffs denominate as the "brown bag" stocks included Jockey Club, Inc., Comprehensive Environmental Systems, Icis Management Group and U.S. Bridge. *See* Am. Compl. at ¶¶ 67–68. At various points in their briefs both parties list purchasers of the brown bag stocks as proposed members of the class. *See e.g.* Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification dated February 19, 1999 ("Def. Opp.") at 2; Plaintiffs' Memorandum of Law in Support of their Motion for Class Certification dated January 11, 1999 ("Pltf.Mem.") at 2, 10. However, since plaintiffs' complaint states that the proposed class members include only purchasers of the promoted securities and because none of the ten class representatives initially proposed by plaintiff ever purchased brown bag stocks, the Court will not certify any of these individuals as representatives of any class other than the purchasers of the promoted securities. *See* Amend. Compl. at ¶¶ 1, 27; Def. Opp. at 16.

tioned securities from A.R. Baron from July 20, 1995 through and including July 28, 1996. *See* Notice of Plaintiffs' Motion for Class Certification dated January 1, 1999 at 2. Defendants contend that common questions of law and fact do not predominate and that each of the proposed class representatives are subject to unique defenses which render them unfit to serve in such capacity.

## DISCUSSION

In order to certify a class, the Court must find that plaintiffs have satisfied the prerequisites to class certification found in Rule 23. *See General Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce Fenner, & Smith, Inc.,* 903 F.2d 176, 180 (2d Cir.1990). Rule 23 sets forth four requirements for class certification: (1) the class is so numerous that joinder of all members is impracticable[4]; (2) there are common questions of law or fact common to the class; (3) the claims and defenses of the plaintiffs are typical; and (4) plaintiffs will fairly and adequately protect the interests of the class. *See* Fed.R.Civ.P. 23(a). The Court must also find that common questions of law or fact predominate over individual issues, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See* Fed.R.Civ.P. 23(b)(3).

1. *Predominance of Common Questions of Law or Fact—Rule 23(a)(2) and Rule 23(b)(3)*

■ Rule 23(a)(2) demands that the prospective class members share common questions of law or fact but does not require that every question of law or fact be common to every class member. *See* 7A Wright et al., Federal Practice and Procedure: Civil 2d. § 1763, at 196 (1986). Rule 23(b)(3) requires that common questions predominate and is

satisfied where "plaintiffs allege . . . a single common thread to which all the fraudulent activity is related." *Tedesco v. Mishkin,* 689 F.Supp. 1327, 1334 (S.D.N.Y.1988).

■ Defendants expend a substantial part of their efforts arguing that plaintiffs have failed to allege that Bear, Stearns activities were part of a scheme with common questions of law and fact and that common questions predominate over individual ones. Defendants argue that plaintiffs assert three distinct types of wrongful conduct which do not allege a common scheme with respect to the various securities supposedly manipulated by defendants in this action. *See* Def. Opp. at 11–12. However, the allegations in plaintiffs' complaint, which must be accepted as true at this stage of the proceedings, *see In re Blech Sec. Litig.,* 187 F.R.D. 97, 100 (S.D.N.Y.1999), assert that the defendants, along with A.R. Baron, entered into a scheme to defraud investors of the securities of the promoted companies by engaging in "parking" of securities, unauthorized purchases, and other fraudulent practices. This was all done, plaintiffs assert, under the careful supervision and control of the defendants, and with the goal of keeping A.R. Baron afloat while the defendants reaped handsome profits on their commissions. *See* Am. Compl. at ¶ 63. Moreover, with respect to the Paperclip IPO, plaintiffs allege that defendants agreed with A.R. Baron to oversell the Paperclip IPO and use the excess proceeds to support the price of the promoted companies' securities. *See* Am. Compl. at ¶¶ 56–58. If proven true, plaintiffs' allegations regarding the use of the excess proceeds from the Paperclip IPO, along with their allegations regarding defendants' purported market manipulation of the other securities, are part and parcel of establishing defendants' knowing participation in the scheme alleged.[5] Hence, plaintiffs have al-

---

4. Defendants' only dispute regarding numerosity is that, should the Court certify a subclass for each promoted security, certain of these individual subclasses would not independently meet the numerosity requirement. *See* Def. Opp. at 22. Since the Court has found certification of subclasses unnecessary, defendants' argument is irrelevant and there is no dispute regarding nu-

merosity. Accordingly, the Court will not further discuss this requirement.

5. Defendants argue that the Paperclip IPO cannot be considered as a part of the plaintiffs' claim. With respect to plaintiffs' market manipulation allegations, the Court agrees that it is inappropriate to allow plaintiffs to include the Paperclip IPO stock in its list of "promoted"

leged common questions of law and fact with respect to defendants' liability in the alleged market manipulation of the promoted securities that predominate over individual questions of law and fact.

██ Defendants' concern that members of the proposed class will present widely different damage issues because some of them both purchased and sold securities during the class period and because there are ten different securities involved is not dispositive at this stage of the proceeding. When considering whether common questions of law predominate, the Court appropriately focuses on the liability issue "and if the liability issue is common to the class, common questions are held to predominate." *Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y.1981) (Edelstein, J.); *accord Dietrich v. Bauer*, 192 F.R.D. 119, 127 (S.D.N.Y.2000); *In re Sumitomo Copper Litigation*, 182 F.R.D. 85, 91 (S.D.N.Y.1998) (Pollack, J.); *In re Prudential Sec., Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 206 (S.D.N.Y.1995). Moreover, as this Court has noted, "individual questions with respect to damages will not defeat class certification or render a proposed representative inadequate unless that issue creates a conflict which goes to the heart of the lawsuit." *In re AM Int'l, Inc. Sec. Litig.*, 108 F.R.D. 190, 196 (S.D.N.Y.1985). In the instant case, the alleged scheme used the same techniques of manipulation and fraud for all of the promoted securities and hence there is a common question of liability. Any unique damages individual plaintiffs suffered can be addressed after the issue of liability has been determined.

## 2. Typicality and Adequacy of Class Representatives

### a. Unique Defenses

Defendants raise an exhaustive series of arguments regarding the typicality of the proposed lead plaintiffs who, defendants assert, suffer from various defenses that render them unfit. The Court agrees with defendant that four of the proposed class representatives suffer from unique defenses that would prejudice absent class members should this action proceed to trial and that, as a matter of law, prevent each of them from serving as a class representative. *See Gary Plastic Packaging Corp.*, 903 F.2d at 180; *Kline v. Wolf*, 88 F.R.D. 696, 700 (S.D.N.Y.1981), *aff'd in relevant part*, 702 F.2d 400, 403 (2d Cir.1983).

██ As this Court has previously noted, a person that increases his holdings in a security after revelation of an alleged fraud involving that security is subject to a unique defense that precludes him from serving as a class representative. *See Kovaleff v. Piano*, 142 F.R.D. 406, 408 (S.D.N.Y.1992); *see also In re Avon Sec. Litig.*, No. 91 Civ. 2287, 1998 WL 834366, at *7 (S.D.N.Y. Nov.30, 1998). The record reveals that proposed class representatives Howard Green, Howard Schubert, and Florence Schubert purchased stock in the promoted securities after A.R. Baron disbanded and after the allegations of fraudulent behavior by A.R. Baron became public knowledge. *See* Affidavit of Dennis J. Block dated September 1, 1999 ("Block Affidavit") Exh. E, F, G, 27, 31, 34. Accordingly, these class representatives are subject to unique

securities. Stock acquired in an IPO cannot receive the benefit of the transaction causation presumption which "permits a plaintiff to rely on the integrity of open, well-developed markets, rather than requiring proof of direct reliance on a defendant's conduct." *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, 967 F.2d 742, 748 (2d Cir.1992). Other courts have suggested, and this Court concurs, that such a presumption can not logically apply when plaintiffs allege fraud in connection with an IPO, because in an IPO there is no well-developed market in the offered securities. *See Degulis v. LXR Biotech., Inc.*, 176 F.R.D. 123, 125 n. 1 (S.D.N.Y.1997); *Reingold v. Deloitte Haskins & Sells*, 599 F.Supp. 1241, 1263–64 (S.D.N.Y.1984); *Freeman v. Laventhol &*

*Horwath*, 915 F.2d 193, 198 (6th Cir.1990). Nevertheless, plaintiffs are entitled to prove that funds acquired in the alleged oversubscription of the Paperclip IPO were used in furtherance of the market manipulation scheme alleged.

Moreover, Paperclip stock acquired through Baron on the open market may be appropriately classified as one of the "promoted" securities since such securities are afforded the above-described causation presumption. Accordingly, individuals that purchased Paperclip stock on the open market, in contrast to those whose participation in the IPO constituted their only involvement with Baron, are proper members of the proposed class.

defenses that threaten to become "the focus of the litigation [and] divert attention from the substance of the basic claim." *Kline*, 88 F.R.D. at 700. For these reasons Mr. Green, Mr. Schubert, and Mrs. Schubert may not serve as class representatives.

■ Defendants also contend that the remaining proposed class representatives, each of whom was involved in the Paperclip IPO in some fashion,[6] are subject to unique defenses and must be disqualified as class representatives. In particular, defendants claim that the risk disclosures in the prospectus, which described SEC and NASD investigations into allegations of fraudulent behavior by A.R Baron, put the plaintiffs involved in the IPO on notice of the risks of investing with A.R. Baron. *See* Block Affidavit, Exh. 10, at 12–13.

■ The Court does not agree with defendants' conclusions regarding the consequences of these revelations.[7] First, as the Court noted at oral argument, since the aforementioned prospectus is a public filing, all members of the public are chargeable with knowledge of its contents. This being the case, presumably all members of the proposed class, and not just those who participated in or were otherwise familiar with the Paperclip IPO, would be chargeable with the substance of the prospectus. Second, public information regarding the SEC and NASD investigations appears to have also been available in the form of preliminary SEC company filings, other government and NASD releases, and press reports. *See, e.g., id.*, Exh. 10, at 10–12, 49, Exh. 36; David J. Morrow, *New York Brokerage is Accused of Fraud,* N.Y. Times, May 24, 1996, at D2. Thus even those individuals who purchased the promoted securities during the class period but before the prospectus' effective date were presumably aware of the risks of investing with Baron. Although there may be differences in the level of knowledge of these risks among class members that did or did not participate in the IPO or who otherwise reviewed the prospectus in contemplation of participation, the Court concludes that such potential differences are not so substantial that they subject any of the proposed class representatives to unique defenses that would become the focus of the litigation and substantially prejudice the absent members of the class.[8]

### b. Unrepresented Securities

■ Defendants further attack the typicality of the proposed class representatives on the ground that various promoted stocks were never purchased by any of the class representatives. Hence, defendants assert, plaintiffs have no incentive to show that the markets for these securities were manipulated and that plaintiffs suffered damage as a result of such manipulation. On the con-

---

6. Specifically, plaintiffs Perry and Stackman participated in the IPO, plaintiff Gillis received and reviewed the prospectus for the IPO, and plaintiff Leroy spoke with a Baron broker about, and arranged to have his wife participate in, the IPO. *See* Block Affidavit at Exh. A–D.

7. The Court does, however, find that plaintiff Stackman is subject to a unique defense and may not act as a class representative because his participation in the Paperclip IPO was his only involvement with Baron. *See* Block Affidavit at Exh. 2; Amend. Comp. at Exh. 10. Since Mr. Stackman did not either buy Paperclip stock on the open market or execute trades in any of the other promoted securities, Mr. Stackman cannot, as noted above, benefit from the reliance presumption afforded plaintiffs in fraud on the market cases. *See supra* note 5. Mr. Stackman is the only one of the proposed class representatives in this position and hence he may not represent the class.

8. Defendants argue that various putative class action plaintiffs could not have relied on the integrity of the market because they were speculative traders that relied on the advice of their brokers. *See* Defendants' Supplemental Memorandum of Law in Opposition to Plaintiffs Motion for Class Certification dated September 1, 1999 at 6, 10–12. Individual questions of reliance such as those alleged by defendants are generally not sufficient to defeat class certification. *See In re AM Int'l Sec. Litig.*, 108 F.R.D. at 194. Moreover, an investor may rely on the advice of brokers and still not be subject to a unique defense so long as he also relied on other information such as financial statements or the integrity of the market. *See id.* at 195. The Court's review of the deposition testimony cited by defendants reveals that none of the putative class action plaintiffs relied exclusively on the advice of brokers. *See e.g.* Block Affidavit at Exh. B–D. Accordingly, the Court rejects defendants' contentions regarding plaintiffs' lack of reliance on the integrity of the market price.

trary, the Court finds that the plaintiffs have sufficient incentive to demonstrate a common scheme with respect to all of the promoted securities.[9]

■ To meet the typicality requirement, the proposed class representatives need not have invested in all of the securities listed as part of an alleged fraud. *See Tedesco*, 689 F.Supp. at 1335–36. So long as the plaintiffs allege a single pattern of fraud based on identical legal theories, the typicality requirement is met. *See id.* at 1336; *see also In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir.1992); *In re Blech Sec. Litig.*, 187 F.R.D. at 106. As described above, the Court finds that the plaintiffs allege a common scheme with respect to all of the promoted securities. Moreover, "[t]he legal theories asserted by the Class to prove violations of the federal securities laws will be identical regardless of which of the [Baron] securities is at issue." *In re Blech Sec. Litig.*, 187 F.R.D. at 106. Thus the Court finds that the proposed plaintiff representatives are typical of the class and will adequately protect the interests of the class.

### CONCLUSION

The Court grants plaintiffs' motion for certification of this action as a class action for the purposes of determining liability of defendants. The class shall encompass all customers of A.R. Baron who purchased the stock of the promoted companies from July 20, 1995 until and including June 28, 1996.[10] Plaintiffs Jack Perry, Kevin Gillis, and L. Neil LeRoy are named as class representatives.

9. Defendants' also overstate their case when they argue that plaintiffs who have submitted claims to the SIPC Trustee for the Baron estate similarly lack the incentive to properly litigate this case and should be eliminated as class representatives. *See* Def. Opp. at 20. The record reveals that the Trustee has currently only paid claimants half of their total amount of losses and it is uncertain whether full remittance is possible or will ever occur. *See* Notice of Allowance or Denial of General Creditor and Restitution Fund Claims, *In re A.R. Baron & Co., Debtor,* No. 96–8831A dated May 12, 2000. The fact that a class member has received or will be receiving compensation from the SIPC Trustee, while it may

Counsel for plaintiffs shall serve on defendants and submit, pursuant to Fed.R.Civ.P. 23(c)(2), a proposed form of notice to the class on or before September 29, 2000. Defendants shall file any objections to the proposed notice on or before October 31, 2000.

It is **SO ORDERED.**

result in an offset in damages, does not detract from the incentive to prove the common scheme.

10. Defendants' objections regarding the date of Bear, Stearns involvement in the alleged scheme raise questions of fact relevant to defendants' liability. At this point in the proceeding, the Court must construe plaintiffs' factual allegations as true and may not inquire into the merits of their claim. *See Eisen v. Carlisle,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *In re Blech,* 187 F.R.D. at 100. Thus, inquiry into defendants' allegations regarding the date of their involvement in the alleged scheme are more appropriately considered at trial.