Michael ROCCO, Individually and on Behalf of All Others Similarly Situated, Plaintiff,

v.

NAM TAI ELECTRONICS, INC., et al., Defendants.

No. 03 Civ. 1148(JES).

United States District Court, S.D. New York.

Aug. 21, 2007.

Lerach Coughlin Stoia Geller, Rudman & Robbins LLP, Samuel H. Rudman, Esq. (David A. Rosenfeld, Esq., of counsel), Melville, NY, for Plaintiff and the Class.

Paskowitz & Associates (Roy Jacobs, Esq., of counsel), New York, NY, for Plaintiffs.

Cravath, Swaine & Moore LLP (Stuart W. Gold, Esq., of counsel), New York, NY, for Defendants Nam Tai Electronics, Inc.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Lead plaintiff brings the above-captioned class action against defendants, Nam Tai Electronics, Inc., et al. ("Nam Tai" or "defendants"), seeking damages resulting from alleged acts of securities fraud. The proposed class claims that Nam Tai engaged in accounting manipulations and fraudulently misrepresented financial results, which in turn resulted in inflation of its publicly-traded shares of common stock. After disclosing part of this accounting manipulation nearly a year later, Nam Tai's stock prices fell, thereby injuring the proposed class. Douglas Ward ("Ward") seeks certification for the proposed class in this action, as well as certification as class representative, pursuant to Fed.R.Civ.P. 23. Defendants argue that Ward fails to satisfy all of the requirements of Rule 23, and therefore, that the class as a whole must fail since it is lacking an appropriate representative. For the reasons set forth below, the Court denies the Motion for Class Certification.

## BACKGROUND

Investors claiming to have been damaged by the alleged fraudulent securities schemes filed this class action against Nam Tai with the Court on February 20, 2003 pursuant to Fed.R.Civ.P. 23, with Douglas Ward, among others, named as lead plaintiff. *See* Pl.'s Mem. of Law in Support of Mot. for Class Certification (hereinafter "Pl.'s Mem.") 1. The proposed class includes all purchasers of various quantities of Nam Tai's 12 million shares of stock between the inaccurate press release on July 29, 2002 and the correction and subsequent stock price drop on February 18, 2003, inclusively ("the class period"). *See id.* at 1, 3–5. Ward moved for certification as class representative on May 27, 2005. *See id.*

Plaintiff alleges that Nam Tai Electronics, Inc. engaged in two forms of securities fraud, referred to as the "goodwill fraud" and "inventory fraud" schemes, which led to an inflated price of Nam Tai's publicly-traded common stock during the latter half of 2002. *See* Second Am. Compl. ¶¶ 27, 48–68. The goodwill fraud involved Nam Tai's failure to promptly note a $1.5 million charge against its goodwill in the aftermath of a June 2002 reverse merger with one of its subsidiaries, JIC. *See id.* ¶¶ 59–64. Plaintiff alleges this led to overstatements in Nam Tai's financial results for the second quarter. *See id.* The inventory fraud dealt with the improper write-back of a $2 million inventory charge, supposedly leading to a further overstatement of Nam Tai's second quarter financial statement. *See id.* ¶¶ 48–58.

Nam Tai issued a press release for its 2002 second quarter financial statement on July 29 of that year that included the aforementioned inaccurate accounting figures. *See id.* at ¶ 30; Decl. Of Brian J. Fischer in Opp'n to Pl.'s Mot. for Class Certification, dated June 20, 2005 (hereinafter "Fischer Decl."), Ex. 7.

On February 18, 2003, Nam Tai publicly reported its goodwill fraud, and the company absorbed the appropriate $1.5 million charge that should have been accounted for at the end of the 2002 second quarter. *See* Second Am. Compl. ¶¶ 38–39. This lead to a $9.23 drop per share of the inflated stock prices over the ensuing two days. *See id.* at ¶ 40. Plaintiff never claimed any public disclosure of a correction of the alleged inventory fraud in his Second Amended Complaint. In fact, plaintiff's Second Amended Complaint alleges that these two fraudulent statements, combined, amounted to a $3.5 million overstatement at the time of the February 18 disclosure, but that only approximately half of this error was fixed at that time. *See id.* at ¶ 69.

Defendants allege that Ward, the focus of this motion, is not an appropriate class representative, in part because he has caused many discovery delays, consisting of failures to timely produce requested documents, and then only piecemeal compliance under court orders.[1] *See* Defs.' Mem. of Law in Opp'n to Pl.'s Mot. for Class Certification (hereinafter "Defs.' Mem.") 20–23. Ward also purchased shares of Nam Tai stock following the end of the class period on four separate occasions. *See id.* at 4–6. These purchases reflect transactions made the day after his motion for lead plaintiff was filed on April 22, 2003, and then a week after his Amended Complaint was filed on July 2, 2003.[2]

Additionally, Nam Tai questions Ward's credibility as class representative based on his responses to questioning about a 1993 DUI conviction that resulted in a suspension of his driver's license. *See id.* at 23–24. When asked questions relating to his driving practices during his suspension, Ward responded: "I don't recall specifically, but I drove during the period in question." *See* Tr. Of Douglas Ward's Dep., dated May 6, 2005 (hereinafter "Tr.") at 239. After further questions relating to his driver's license suspension, Ward said, "Again, I'm not trying to be elusive, but I'm confused by reason of the fact that there was a former, as I recall, DUI. I may be getting them mixed up to some degree." *See id.* at 240. These provide the essence of Defendants' credibility accusations against Ward. *See* Defs.' Mem. at 23–24.

While this motion was pending, Michael Rocco ("Rocco") filed a motion to be certified as an additional class representative. Rocco has since then withdrawn his motion.

## DISCUSSION

In order to grant class certification, this Court must determine that the proposed class has satisfied all prerequisites in Fed. R.Civ.P. 23(a): numerosity, commonality, typicality and adequacy. Additionally, the class must fall within one of the categories listed under Rule 23(b). For a 23(b)(3) class, the Court must determine that "questions of law or fact common to the members of the class" predominate and that a class action is the best method for "fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3); *see also Miles v. Merrill Lynch & Co.*, 471 F.3d 24, 32, 40 (2d Cir.2006).

█ The Rule 23(a) and (b) factors of numerosity and commonality are satisfied by the proposed class. Given the excess of 12 million outstanding shares of Nam Tai common stock, it is foreseeable that the number of proposed class action plaintiffs suing Nam Tai is "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1); Pl.'s Mem. 3. Though the exact number of potential class members is undisclosed, "precise quantification of the class members is not necessary because the court

---

1. Specific instances of such alleged behavior include, among others, Ward's reluctance to produce documents related to his Nam Tai stock transactions outside of the class period without a court order forcing him to do so, as well as causing the proposed discovery deadline to be extended four months past its scheduled date. *See* Defs.' Mem. at 20–23.

2. During the proposed class period, Ward made eight separate purchases of Nam Tai stock, with prices ranging from $23.35 to $32.91. *See* Fischer Decl., Ex. 9–16. Following the February 18, 2003 disclosure, though, Ward bought more shares on April 23, 2003 at $25.12; April 29, 2003 at $26.85; July 1, 2003 at $38.92; and then again on July 9, 2003 at $17.88 after a three-for-one stock split the day before. *See* Fischer Decl., Ex. 18–21.

may make common sense assumptions to support a finding of numerosity." *In re NASDAQ Market–Makers Antitrust Litig.,* 169 F.R.D. 493, 509 (S.D.N.Y.1996) (quoting *German v. Fed. Home Loan Mortgage Corp.,* 885 F.Supp. 537, 552 (S.D.N.Y.1995)). Considering the duration of the proposed class period and the likelihood that a multiplicity of transactions had occurred with the stated volume of shares, this Court makes this assumption.

■ Pursuant to Rule 23(a)(2), the commonality prong for class certification requires "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). With the instant proposed class, the common issue uniting its members is their collective damages resulting from the alleged fraudulent securities practices engaged in by Nam Tai during the class period.

■ Fed.R.Civ.P. 23(b) also requires satisfaction of one of three prongs. The relevant classification in the current litigation is subsection (b)(3). To qualify for a Rule 23(b)(3) class, the proposed class must meet two further requirements in addition to those as discussed under 23(a): "predominance, *i.e.,* law or fact questions common to the class predominate over questions affecting individual members, and superiority, *i.e.,* class action is superior to other methods." *Miles,* 471 F.3d at 32. The proposed class members all bring the predominant issue of Nam Tai's fraudulent financial reporting and the subsequent losses in their stock investments. If the fraud on the market presumption outlined in *Basic v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988), is applied, all proposed class members can be assumed by the Court to have been impacted thereby. As discussed below, given the absence of a public correction of the alleged inventory fraud, however, there is some question as to the application of this presumption to the class with respect to this fraud. This Court finds that the second prong of Rule 23(b)(3) is satisfied because the quantity of potential class members lends to best resolving this issue as a class action suit.

■ Despite meeting the above requirements, Douglas Ward, the proposed class representative, fails as a typical or adequate class representative. The final two barriers to class certification hinge on whether the class representative has typical claims or defenses in relation to the rest of the class, and whether that representative will be adequate to defend the class's interests. Fed.R.Civ.P. 23(a)(3) and (4). The Second Circuit has not clearly delineated between typicality and adequacy requirements for class representatives, as they overlap. *See Jones v. Ford Motor Credit Co.,* 2005 WL 743213, at *5–6, 2005 U.S. Dist. LEXIS 5381, at *19 (S.D.N.Y. Mar. 31, 2005).

■ Ward is atypical from the rest of the proposed class. Typicality is satisfied when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re WorldCom,* 219 F.R.D. 267, 280 (S.D.N.Y. 2003) (quoting *Robinson v. Metro–North Commuter R.R.,* 267 F.3d 147, 155 (2d Cir. 2001)). As to the class representative specifically, "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation," certification for the class is improper because he or she can no longer act in the best interest of the class. *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 59 (2d Cir. 2000).

Rationale for this approach to unique defenses comes from *Kline v. Wolf,* 88 F.R.D. 696 (S.D.N.Y.1981), which denied class certification because class members are entitled to be represented by someone unhindered by unique defenses. *See id.* at 699–701. The *Kline* court noted that class representatives who are subject to unique defenses have a likely potential to be "the focus of the litigation and ... upon a trial, divert attention from the substance of the basic claim." *See id.* at 700; *see also Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 180 (2d Cir.1990) (noting how a class representative's unique defenses pose a danger to the ability of absent class members to recover from the defendant).

Under this framework, Ward is clearly atypical of the rest of the proposed class.

The primary issue is the fact that he made numerous post-class purchases of Nam Tai stock. Ward claims that these transactions were made strategically because he felt Nam Tai's fraudulent problems were behind it, and the company had a revived "upside potential." *See* Tr. at 154. However, it is doubtful whether this assumption was based upon the stock market.[3] Although there is no per se rule to this effect, this Court has consistently held that "a person that increases his holdings in a security after revelation of an alleged fraud involving that security is subject to a unique defense that precludes him from serving as a class representative." *Berwecky v. Bear, Stearns & Co.*, 197 F.R.D. 65, 69 (S.D.N.Y.2000); *see also Kovaleff v. Piano*, 142 F.R.D. 406, 408 (S.D.N.Y.1992). Further, it has been recognized that a "named plaintiff who is subject to an arguable defense of non-reliance on the market has been held subject to a unique defense, and therefore, atypical of the class under Rule 23(a)(3)." *In re Harcourt Brace Jovanovich, Inc.*, 838 F.Supp. 109, 113 (S.D.N.Y.1993).

Ward's allegations of the inventory fraud are particularly harmful to his efforts for certification as class representative, as he bought Nam Tai stock despite information he had about Nam Tai's allegedly manipulated finances. The inventory write-back that he alleges is discussed in his Second Amended Complaint, but nowhere is it alleged that this fraud has ever been publicly corrected. *See* Second Am. Compl. ¶¶ 48–58, 69. Absent a public disclosure of a correction, not only would there be no corresponding drop in stock price attributable to that correction, but the class affected by the inventory fraud would, presumably, still be open. The fact that Ward is alleging this second fraud and still made his post-class purchases while this ongoing issue was known to him makes him subject to potential unique defenses at trial. Ward and his post-class purchases could therefore become the focus of the litigation and thus detract from the ability of absent class members to recover damages. *See Kline*, 88 F.R.D. at 700. Since the Second Amended Complaint does not allege that the inventory fraud was ever publicly corrected, it is virtually impossible to conclude that the drop in the stock price is attributable to the uncorrected fraud. In sum, plaintiff has not set forth any facts from which a reasonable fact-finder can conclude that the stock drop is in any way attributable to the inventory fraud. This circumstance renders the unique defenses against Ward even more compelling.

■ Defendants also indicate that Ward, a retired attorney, might be a "sophisticated investor." *See* Defs.' Mem. at 1. This is easily rebutted, as courts have held that sophistication of the class representative does not necessarily mean "his claim arises any less from the same course of events and raises the same legal liabilities as every other member of the putative class." *Cross v. 21st Century Holding Co.*, 2004 WL 307306, at *3, 2004 U.S. Dist. LEXIS. 2283, at *8 (S.D.N.Y. Feb. 18, 2004). However, with Ward, there are other, stronger allegations made against his ability to serve as class representative, such as the fact that his post-class purchases indicate, if anything, that he was relying not on the market, but on his own assessment of the value of the stock.

■ Ward is also an inadequate class representative and thus fails the adequacy element of Fed.R.Civ.P. 23(a). The *Kline* court discussed the importance of an adequate representative who "serves as a fiduciary to advance and protect the interests of those whom he purports to represent." *Kline*, 88 F.R.D. at 700. Further, "their interests are entrusted to the fiduciary's diligence and industry and the successful protection of the class claims depends upon his integrity." *See id.* Just as Ward is subject to unique defenses questioning his typicality, this Court also finds him prone to the following unique defenses that jeopardize his adequacy.

Defendants allege that Ward failed to properly comply with discovery requests and

---

3. Ward's last purchases of Nam Tai stock within the class period were at $30.71 and $30.75 on January 15, 2003 and $32.91 on January 29, 2003. *See* Fischer Decl., Ex. 15–16. However, his first two post-class purchases were well below these figures as previously noted, at $25.12 and $26.85, respectively. *See* Fischer Decl., Ex. 18–19.

document production in a timely fashion. *See* Defs.' Mem. at 20. This, in turn, could impact Ward's credibility if this information were brought before the jury at trial. While denying certification, the *Kline* court held that the proposed representative's "failure to comply with proper discovery inquiry may be considered on the issue as to whether a class representative lives up to his fiduciary obligation." *Kline*, 88 F.R.D. at 700. The unique defenses that would arise during trial from such accusations against Ward would pose a problem to the rest of the class in making his unique defenses the focus of the litigation.

 Defendants offer further evidence to question Ward's "honesty and trustworthiness" by noting his prior conduct. *See* Defs.' Mem. 3. As a result of a 1993 DUI conviction resulting in the suspension of his driver's license and allegations of his reluctance to discuss that matter fully during his deposition, defendant contends that Ward is not a credible class representative. *See id.* The Court, however, does not find that Ward's deposition damages his credibility. While Ward's responses might not have been helpful to defendant in gathering depositions, the Court finds them to be arguably honest answers and legitimate memory lapses about events taking place over ten years ago. Additionally, "consideration of trustworthiness and credibility are not without limitation, however, but instead are restricted to their relevance to issues in the litigation." *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 144 (S.D.N.Y.2007).[4] Ward's criminal history as a whole, then, is irrelevant to this securities fraud case. For these reasons, Ward's criminal history will not be considered as evidence of his inadequacy to represent this class.

## CONCLUSION

This Court hereby denies plaintiff's Motion for Class Certification. A Pre–Trial Confer-

ence shall be held on October 23, 2007 at 3:00 P.M., in Courtroom 14C, 500 Pearl Street.

**It is SO ORDERED**

---

4. For examples of recent Second Circuit cases certifying class representatives with unrelated criminal histories, see *Torres v. Gri stede's Operating Corp.*, 2006 WL 2819730, at *15, 17, 2006 U.S. Dist. LEXIS 74039, at *50, *56 (S.D.N.Y. Sept. 29, 2006); *Spinner v. City of New York*, 2003 WL 23648356, at *4, 7, 2003 U.S. Dist. LEXIS 19298, at *15, *22 (S.D.N.Y. Oct. 10, 2003).