**In re INITIAL PUBLIC OFFERING SECURITIES LITIGATION.**

**In re Rediff.com India Ltd. Securities Litigation.**

**No. 21 MC 92(SAS).**
**No. 01 Civ. 3020(SAS).**

United States District Court,
S.D. New York.

Feb. 28, 2007.

Christopher Lovell, Victor E. Stewart, Robert W. Rodriguez, Lovell Stewart Halebian LLP, New York, New York, for Plaintiffs.

Alan S. Goudiss, Adam Hakki, Shearman & Sterling LLP, New York, New York, for the Underwriter Defendants.

Geoffrey S. Stewart, Jayant W. Tambe, Maureen F. O'Hara, Jones Day, New York, New York, for the Rediff Defendants.

### OPINION and ORDER

SCHEINDLIN, District Judge.

### I. BACKGROUND

The factual allegations giving rise to this securities action are set forth in an Opinion and Order dated October 15, 2004, familiarity with which is assumed.[1] In short, this suit is brought on behalf of all persons, other than

---

1. *See In re Initial Pub. Offering Sec. Litig. ("In re IPO")*, 358 F.Supp.2d 189, 196–204 (S.D.N.Y. 2004).

defendants, who purchased or otherwise acquired American Depositary Shares ("ADSs") of Rediff.com India Ltd. ("Rediff") in an initial public offering on June 14, 2000 (the "IPO"), and/or who purchased Rediff ADSs on the open market between the time of the IPO and April 4, 2001 (the "Class Period").[2] Plaintiffs have sued Rediff, the underwriters for Rediff's IPO,[3] and several officers and directors of the Company.[4] Plaintiffs' Consolidated Amended Securities Class Action Complaint brings two types of claims: (1) IPO-related claims involving allegations that defendants fraudulently inflated the share price during and after the Rediff IPO through tie-in agreements, undisclosed compensation and analyst conflicts; and (2) non-IPO claims involving allegations of misrepresentations and omissions concerning Rediff's business in its Registration Statement and subsequent public filings.

After this Court denied defendants' motions to dismiss,[5] plaintiffs and the Rediff Defendants entered into mediation before Magistrate Judge Henry Pitman.[6] After that mediation ended without achieving a settlement, the parties engaged in extensive discovery, including large-scale document production and depositions of all Individual Defendants and lead plaintiffs.[7] Subsequently, the parties engaged in direct negotiations resulting in plaintiffs agreeing to resolve all causes of action with the Rediff Defendants and to dismiss the non-IPO causes of action against the Underwriter Defendants.[8] Plaintiffs now move without opposition for an order: (1) preliminarily approving the proposed class settlement; (2) certifying the settlement class for purposes of the proposed settlement only; (3) directing that notice of the proposed settlement be given to members of the settlement class; and (4) scheduling a hearing before the Court to determine whether the proposed settlement should be given final approval.

For the reasons set forth below, plaintiffs' motion is granted. Hearings will be scheduled to determine the form, substance and program of notification and to determine whether the proposed settlement should be given final approval.

## II. LEGAL STANDARD

### A. Court Approval of Class Action Settlements Generally

■ Unlike settlements in ordinary suits, the settlement of a class action must by

---

2. This consolidated litigation is prosecuted by lead plaintiffs Drs. Suresh Khanna and Avinash M. Desai (as trustee and custodian) and named plaintiffs Thomas Karakunnel, Roger Steward and Anup Kumar Bhasin (collectively, "plaintiffs").

3. The underwriter defendants are Goldman Sachs (Asia) L.L.C., Goldman Sachs & Co., Credit Suisse First Boston Corp., and Robert Fleming, Inc. (collectively, the "Underwriter Defendants" or "Non–Settling Defendants").

4. These defendants are Ajit Balakrishnan, Nitin Gupta, Rajiv Warrier, and Richard Li (collectively, the "Individual Defendants"). Rediff and the Individual Defendants are referred to collectively as the "Rediff Defendants" or the "Settling Defendants."

5. See In re IPO, 358 F.Supp.2d at 208–23. The non-IPO claims that survived the motion to dismiss were: (1) all defendants violated section 11 of the Securities Act, 15 U.S.C. § 77k (2006), as a result of alleged misrepresentations and omissions in the Registration Statement; (2) the Rediff Defendants violated section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b) (2006), as well as Rule 10b–5, 17 C.F.R. § 240.10b–5 (2006), promulgat-

ed thereunder, with respect to alleged misrepresentations and omissions made after the IPO; and (3) the Individual Defendants violated section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a) (2006), with respect to such misrepresentations and omissions.

6. See Stipulation and Agreement of Settlement ("Settlement Stipulation") ¶¶ H, K; see also Declaration of Robert Rodriguez in Support of Plaintiffs' Motion for Preliminary Approval of the Proposed Settlement of the Claims Against the Rediff Defendants ("Rodriguez Decl.") ¶ 4.

7. See Memorandum in Support of Plaintiffs' Motion for Preliminary Approval of the Proposed Settlement of the Claims Against the Rediff Defendants ("Pl.Mem.") at 4–5; see also Rodriguez Decl. ¶ 6.

8. See Rodriguez Decl. ¶ 7. Only the section 11 IPO cause of action and the non-IPO causes of action as to the Rediff Defendants are being settled; the remaining IPO causes of action against the Rediff Defendants and the non-IPO causes of action against the Underwriter Defendants are being dismissed. See Settlement Stipulation ¶¶ E–F.

approved by the court.[9] The court owes a duty to class members to ensure that the proposed settlement is "fair, reasonable, and adequate."[10] In making this determination, the court's "primary concern is with the substantive terms of the settlement"; accordingly, the court must "compare the terms of the compromise with the likely rewards of litigation."[11] The trial judge must "apprise herself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated."[12] The court should not go so far as to effectively conduct a trial on the merits, but should make "findings of fact and conclusions of law whenever the propriety of the settlement is seriously in dispute."[13] The court must also scrutinize the negotiating process leading up to the settlement. "A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." '[14]

■ In determining whether a settlement is fair, reasonable, and adequate, courts in this Circuit look to the well-established *Grinnell* factors: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.[15] Ultimately, the approval of the proposed settlement of a class action is entrusted to the discretion of the trial court.[16] In exercising that discretion, though, "it is axiomatic that the law encourages settlement of disputes."[17]

## B. Certification of a Settlement Class: Rule 23

■ The use of a settlement class allows the parties to concede, for purposes of settlement negotiations, the propriety of bringing the suit as a class action and allows the court to postpone formal certification of the class until after settlement negotiations have ended. A settlement-only class must meet all the requirements of Federal Rule of Civil Procedure 23, with one important exception: because the case will never go to trial, the court need not consider the manageability of the proceedings should the case or cases proceed to trial.[18] In the settlement context, the "specifications of [Rule 23]—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention."[19]

9. See Fed.R.Civ.P. 23(e). See also Polar Int'l Brokerage Corp. v. Reeve, 187 F.R.D. 108, 112–13 (S.D.N.Y.1999).

10. Fed.R.Civ.P. 23(e)(1)(C).

11. Polar Int'l Brokerage Corp., 187 F.R.D. at 112 (citing Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424–25, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968); Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982)).

12. Id. (alteration omitted).

13. Id. (citing Malchman v. Davis, 706 F.2d 426, 433 (2d Cir.1983)).

14. Wal–Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir.2005) (quoting Manual for Complex Litigation, Third § 30.42 (1995)). Accord Thompson v. Metro. Life Ins. Co., 216 F.R.D. 55, 61 (S.D.N.Y.2003) ("A strong presumption of fairness attaches to proposed settlements that have been negotiated at arm's length.").

15. See City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir.1974), abrogated on other grounds by Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir.2000). See also D'Amato v. Deutsche Bank, 236 F.3d 78, 86 (2d Cir.2001) (citing Grinnell and applying its nine-factor test to evaluate class action settlement).

16. See Joel A. v. Giuliani, 218 F.3d 132, 139 (2d Cir.2000).

17. Bano v. Union Carbide Corp., 273 F.3d 120, 129 (2d Cir.2001).

18. See Manual for Complex Litigation, Fourth § 21.132 (2004).

19. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

■ The United States Supreme Court has expressly approved the use of the settlement class device, while also warning that the device raises special concerns.[20] For example, as courts and commentators have noted, when settlement occurs early in the case the parties have less information on the strengths and weaknesses of the claims, and thus the court and class members may be hampered in their ability to determine the fairness of the settlement.[21] The use of this device may also raise concerns about collusion and the ability of plaintiffs' counsel to represent the interests of the entire class.[22] Thus, because of these concerns, when a settlement class is certified after the terms of settlement have been reached, courts must require a "clearer showing of a settlement's fairness, reasonableness and adequacy and the propriety of the negotiations leading to it." [23]

## 1. The Requirements of Rule 23

Rule 23 governs class certification. To be certified, a putative class must meet all four requirements of Rule 23(a) as well as the requirements of one of the three subsections of Rule 23(b). In this case, as in most cases seeking money damages, plaintiffs bear the burden of demonstrating that the class meets the Rule 23(a) requirements—numerosity, commonality, typicality, and adequacy[24]— and that the action is "maintainable" under Rule 23(b)(3).[25] Under Rule 23(b)(3)—the only applicable subsection of Rule 23(b)— "common" issues of law or fact must "predominate over any questions affecting only individual members," and a class action must be demonstrably "superior" to other methods of adjudication.[26]

### a. Rule 23(a)

### i. Numerosity

■ Rule 23 requires that the class be "so numerous that joinder of all members is impracticable." [27] Impracticable does not mean that joinder is "impossible," but that joinder is difficult or inconvenient.[28] Although precise calculation of the number of class members is not required, and it is permissible for the court to rely on reasonable inferences drawn from available facts, numbers in excess of forty generally satisfy the numerosity requirement.[29]

### ii. Commonality

■ Commonality requires a showing that common issues of fact or law affect all class members.[30] A single common question

**20.** *See id.* at 618, 117 S.Ct. 2231 ("the 'settlement only' class has become a stock device").

**21.** *See Manual for Complex Litigation, Fourth* § 21.132 ("Extended litigation between or among adversaries might bolster confidence that the settlement negotiations were at arm's length. If, by contrast, the case is filed as a settlement class action or certified for settlement with little or no discovery, it may be more difficult to assess the strengths and weaknesses of the parties' claims or defenses, to determine the appropriate definition of the class, and to consider how class members will actually benefit from the proposed settlement.").

**22.** *See In re General Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 787 (3d Cir.1995) ("[T]he court performs its role as supervisor/protector without the benefit of a full adversarial briefing on the certification issues. With less information about the class, the judge cannot as effectively monitor for collusion, individual settlements, buy-offs ... and other abuses."); *see also Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co.,* 834 F.2d 677, 680 (7th Cir.1987) ("[t]he danger of a premature, even a collusive, settlement is increased when ... the status of the action as a class action is not determined until a settlement has been negotiated, with all the momentum that a settlement agreement generates").

**23.** *Polar Int'l Brokerage Corp.,* 187 F.R.D. at 113 (citing *Weinberger,* 698 F.2d at 73).

**24.** *See In re Nassau County Strip Search Cases,* 461 F.3d 219, 222 (2d Cir.2006).

**25.** *See Amchem Prods.,* 521 U.S. at 614, 117 S.Ct. 2231.

**26.** Fed.R.Civ.P. 23(b)(3).

**27.** Fed.R.Civ.P. 23(a)(1).

**28.** *Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir.1993).

**29.** *See Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.1995).

**30.** *See* Fed.R.Civ.P. 23(a)(2). *See also Trief v. Dun & Bradstreet Corp.,* 144 F.R.D. 193, 198 (S.D.N.Y.1992).

may be sufficient to satisfy the commonality requirement.[31] "The critical inquiry is whether the common questions are at the core of the cause of action alleged." [32] The commonality requirement has been applied permissively in securities fraud litigation.[33] In general, where putative class members have been injured by similar material misrepresentations and omissions, the commonality requirement is satisfied.[34]

### iii. Typicality

The claims or defenses of the representative parties must be typical of the claims or defenses of the class.[35] This requirement "is not demanding." [36] A named plaintiff's claims are typical where each class member's claims arise from the same course of events and each class member makes similar legal arguments to prove the defendants' liability.[37]

■ "The rule is satisfied ... if the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class mem-bers." [38] A putative class representative's claims are not typical if that representative is subject to unique defenses.[39] The test for determining if a representative is subject to unique defenses is whether the defenses will become the focus of the litigation, overshadowing the primary claims and prejudicing other class members.[40] Accordingly, the commonality and typicality requirements "'tend to merge' because '[b]oth serve as guideposts for determining whether ... the named plaintiff's claim and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence.' " [41]

### iv. Adequacy

■ Plaintiffs must also show that "the representative parties will fairly and adequately protect the interests of the class." [42] Representation is adequate if: (1) there is no conflict of interest between the plaintiffs and the other class members; and (2) plaintiffs' attorneys are qualified, experienced and capable.[43] It is well established that "in com-

31. *See Vengurlekar v. Silverline Techs., Ltd.*, 220 F.R.D. 222, 227 (S.D.N.Y.2003).

32. *D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 456 (E.D.N.Y.1996) (quotation omitted). *Accord In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 166–67 (2d Cir.1987).

33. *See In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y.2006).

34. *See, e.g., Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir.1975) ("Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable...."); *In re Baldwin–United Corp. Litig.*, 122 F.R.D. 424, 426 (S.D.N.Y. 1986) ("The nub of plaintiffs' claims is that material information was withheld from the entire putative class in each action, either by written or oral communication. Essentially, this is a course of conduct case, which as pled satisfies the commonality requirement of Rule 23....").

35. *See* Fed.R.Civ.P. 23(a)(3).

36. *Fogarazzo v. Lehman Bros., Inc.*, 232 F.R.D. 176, 180 (S.D.N.Y.2005) (citing *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir.1993)).

37. *See Robinson v. Metro–North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir.2001).

38. *Marisol A. v. Giuliani*, 929 F.Supp. 662, 691 (S.D.N.Y.1996), *aff'd*, 126 F.3d 372 (2d Cir. 1997).

39. *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir.2000).

40. *See Landry v. Price Waterhouse Chartered Accountants*, 123 F.R.D. 474, 476 (S.D.N.Y.1989).

41. *Caridad v. Metro–North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir.1999) (alterations in original) (quoting *General Tel. Co. v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)).

42. Fed.R.Civ.P. 23(a)(4). *See also Banyai v. Mazur*, 205 F.R.D. 160, 164 (S.D.N.Y.2002).

43. *See Baffa*, 222 F.3d at 60. An antagonistic interest arises when there is a "fundamental conflict or inconsistency between the claims of the proposed class members" that is "so palpable as to outweigh the substantial interest of every class member in proceeding with the litigation." *In re NASDAQ Market–Makers Antitrust Litig.*, 169 F.R.D. 493, 514–15 (S.D.N.Y.1996). *See also Robinson*, 267 F.3d at 170 (holding that Rule 23(a)(4) requires "absence of conflict" between

plex litigations such as securities actions, a plaintiff need not have expert knowledge of all aspects of the case to qualify as a class representative, and a great deal of reliance upon the expertise of counsel is to be expected."[44]

### b. Rule 23(b)

If plaintiffs can demonstrate that the proposed class satisfies the elements of Rule 23(a), they must then establish that the action is "maintainable" as defined by Rule 23(b). An action is maintainable as a class action if one of three alternative definitions of maintainability set forth in Rule 23(b) is met. Plaintiffs argue that this putative class action is maintainable under subdivision (b)(3), which requires "that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."[45] Rule 23(b)(3) thus has two requirements: "predominance" and "superiority."

### i. Predominance

■ "In order to meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole ... predominate over those issues that are subject only to individualized proof."[46] "The

23(b)(3) predominance requirement is 'more stringent' and 'far more demanding than' the commonality requirement of Rule 23(a)."[47] Courts frequently have found that the requirement was not met where, notwithstanding the presence of common legal and factual issues that satisfy the commonality requirement, individualized inquiries predominate.[48] Nonetheless, the Supreme Court has noted that the predominance requirement is "readily met in certain cases alleging consumer or securities fraud...."[49]

### ii. Superiority

■ In order to satisfy the superiority requirement of Rule 23(b)(3), a plaintiff must establish that a class action is superior to other methods of adjudication.[50] The court should consider, *inter alia*, "the interest of the members of the class in individually controlling the prosecution or defense of separate actions" and "the difficulties likely to be encountered in the management of a class action."[51]

### c. Standard of Proof

■ The Second Circuit recently articulated the requisite standard of proof for class certification in *Miles v. Merrill Lynch & Co.*[52] District courts may certify classes only after assessing "all the relevant evidence admitted at the class certification stage," and determining that "each of the Rule 23 requirements has been met."[53] Furthermore,

named representatives and class, as well as "vigorous prosecution").

**44.** *In re AM Int'l, Inc. Sec. Litig.*, 108 F.R.D. 190, 196–97 (S.D.N.Y.1985).

**45.** Fed.R.Civ.P. 23(b)(3).

**46.** *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir.2001) (quotation marks and citation omitted).

**47.** *Maneely v. City of Newburgh*, 208 F.R.D. 69, 76 (S.D.N.Y.2002) (quoting *Amchem Prods.*, 521 U.S. at 623–24, 117 S.Ct. 2231).

**48.** *See, e.g., In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 209 F.R.D. 323, 350 (S.D.N.Y. 2002) (finding individual issues predominate although defendants conceded commonality); *Augustin v. Jablonsky*, No. 99–CV–3126, 2001 WL 770839, at *13 (E.D.N.Y. Mar.8, 2001) (finding

individualized issues of proximate causation predominate despite plaintiffs' showing of commonality under Rule 23(a)(2)); *Martin v. Shell Oil Co.*, 198 F.R.D. 580, 592–93 (D.Conn.2000) (finding individualized proof of breach, causation, and trespass predominates where commonality was not contested).

**49.** *Amchem Prods.*, 521 U.S. at 625, 117 S.Ct. 2231.

**50.** *See* Fed.R.Civ.P. 23(b)(3). *See also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

**51.** Fed.R.Civ.P. 23(b)(3).

**52.** 471 F.3d 24 (2d Cir.2006).

**53.** *Id.* at 42.

such determinations can be made only if the [court] resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met.[54]

A court's "obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue"— even where the two are "identical."[55] In making these determinations, however, courts should refrain from considering "aspect[s] of the merits unrelated to a Rule 23 requirement."[56] In other words, the court must "assess all of the relevant evidence ... just as [it] would resolve a dispute about any other threshold prerequisite for continuing a lawsuit."[57]

## C. Preliminary Approval of a Proposed Class Action Settlement

Review of a proposed class action settlement generally involves a two-step process: preliminary approval and a subsequent "fairness hearing." The court first must review the proposed terms of settlement and make a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms.[58] "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted."[59]

■■■ If the court preliminarily approves the settlement, it then must direct the preparation of notice informing class members of the certification of the settlement class, the proposed settlement and the date of the final fairness hearing. Rule 23(e)(1)(B) states that "the court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise."[60] The Private Securities Litigation Reform Act ("PSLRA") adds an additional layer of requirements for settlement notices.[61] "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings."[62]

Once the court directs notice, class members (and non-settling defendants whose rights may be affected by the proposed settlement) then have an opportunity to present their views of the proposed settlement, and the parties may present arguments and evidence for and against the terms, before the court makes a final determination as to whether the proposed settlement is fair, reasonable and adequate.[63]

## III. THE PROPOSED SETTLEMENT

■■■ The primary terms of the proposed settlement, its accompanying documents and

---

54. *Id.* at 41.

55. *Id.*

56. *Id.*

57. *Id.* at 42.

58. *See Manual for Complex Litigation, Fourth* § 21.632.

59. *In re Nasdaq Market–Makers Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D.N.Y.1997) (citing *Manual for Complex Litigation, Third* § 30.41).

60. Notice is necessary, among other reasons, to uphold the due process rights of absent class members. *See Eisen,* 417 U.S. at 173–77, 94 S.Ct. 2140.

61. *See* 15 U.S.C. § 78u–4(a)(7) ("Any proposed or final settlement agreement that is published or otherwise disseminated to the class shall include each of the following statements, along with a cover page summarizing the information contained in such statements: (A) *Statement of plaintiff recovery*.... (B) Statement of potential outcome of case.... (C) Statement of attorneys' fees or costs sought.... (D) Identification of lawyers' representatives.... (E) Reasons for settlement .... [and] (F) ... Such other information as may be required by the court.").

62. *Wal–Mart Stores,* 396 F.3d at 113–14 (quotation omitted).

63. *See Manual for Complex Litigation, Fourth* §§ 21.632–21.635.

schedules, the proposed Settlement Notice and the proposed settlement order and judgment are straightforward. However, because the formula for determining what each potential claimant might receive is fairly intricate, it will be described in general terms.

## A. Certification of the Settlement Class

The settling parties stipulate to the certification pursuant to Rule 23(a) and Rule 23(b)(3) of the following class for settlement purposes only. The proposed settlement class consists of all persons and entities who purchased Rediff ADSs during the period between June 14, 2000 through April 4, 2001, inclusive.[64] The proposed settlement class excludes: (1) the Settling Defendants; (2) the Underwriter Defendants; (3) directors and officers of Rediff and its subsidiaries and affiliates; (4) members of the immediate families of any Individual Defendant; (5) any entity in which any defendant has a controlling interest; and (6) the legal representatives, heirs, successors-in-interest, or assigns of any excluded party.[65] Also excluded from the proposed settlement class are any putative class members who opt out of the class by timely filing a request for exclusion in accordance with the requirements set forth in the proposed Settlement Notice.

For purposes of the proposed settlement, the parties are seeking certification as to the non-IPO causes of action as to all defendants and the section 11 IPO cause of action as to the Rediff Defendants only.[66] The parties are not seeking certification of any class with respect to the remaining IPO causes of action as to the Rediff Defendants (under section 10(b) and Rule 10b–5, and sections 15 and 20(a)), nor are the parties seeking certification of any class with respect to any of the IPO causes of action as to the Underwriter Defendants.

## B. The Settlement Fund

If the settlement is approved by the Court, the Settling Defendants' insurers will deposit a cash settlement amount of $2,500,000 in an interest-bearing escrow account. Plaintiffs estimate that the average recovery for each Rediff ADS under the proposed settlement is $0.08 before the deduction of Court-awarded attorneys' fees and costs.[67] Plaintiffs derive the average recovery figure based on their estimate that there were approximately 32.1 million Rediff ADSs traded during the Class Period.[68]

The cash settlement and whatever interest it accrues constitutes the "Gross Settlement Fund," which first will pay for all notice costs, administrative expenses and attorneys' fees. The remainder will constitute the "Net Settlement Fund," which will be distributed to all class members who submit acceptable claim information. There will not be any reversion of the Net Settlement Fund to the Settling Defendants.[69]

## C. The Plan of Allocation of the Net Settlement Fund

Potential claimants cannot determine how much they will receive if they file a claim because the actual payout is not based strictly on the number of ADSs they sold and/or the amount of their losses. Rather, the proposed plan of allocation among class members will give each authorized claimant[70] a *pro rata* share of the Net Settlement Fund based on its "recognized claim" as compared

---

64. *See* Settlement Stipulation ¶ 1(c).

65. *See id.*

66. *See id.*

67. *See* Notice of Pendency of Class Action and Proposed Settlement with Rediff.com Defendants, Motion for Attorneys' Fees and Settlement Fairness Hearing ("Settlement Notice"), at 2.

68. *See id.; see also* Rodriguez Decl. ¶ 7 (stating that expert reports indicated that 32,105,400 ADSs of Rediff traded on the NASDAQ). Rediff issued 4.6 million shares in its June 2000 IPO and by the close of the Class Period there were 5.3 million shares outstanding. Plaintiffs estimate that the trading volume during the Class Period was 32.1 million ADSs, based on the fact that the ADSs likely traded more than once during the Class Period. *See* Rodriguez Decl. ¶ 7.

69. *See* Settlement Stipulation ¶ 12.

70. An authorized claimant is defined as "a Class Member who submits a timely and valid Proof of Claim form to the Claims Administrator." *Id.* ¶ 1(a).

to the total recognized claims of all authorized claimants.[71] This means that the actual amount each claimant will receive can be determined only on a proportional basis after all claims have been received and processed by the settlement administrator.

The amount of an authorized claimant's recognized claim is calculated using a sliding scale based on when that claimant sold its ADSs, which is meant to reflect the degree of appreciable harm due to defendants' alleged misconduct.[72] For example, authorized claimants who purchased Rediff ADSs after the alleged misrepresentations and then sold their shares at a loss after Rediff issued alleged corrective disclosures that deflated the stock price will recover more than authorized claimants who bought the same number of shares after the misrepresentations but sold them before the corrective disclosures were made. The amount of the recognized claim will be determined by specific formulas, the precise terms and conditions of which are described in the proposed Settlement Notice and there is no need to reproduce them here. In general, the specific formulas are applied based on the following factors: (1) when the claimant purchased Rediff ADSs; (2) when those shares were sold; (3) the amount of loss incurred; and (4) how many shares, if any, the claimant still held at the close of the Class Period.[73] No recovery is possible for a claimant who realized a net gain from its overall transactions in Rediff ADSs during the Class Period.[74]

## D. Payment of Attorneys' Fees

Plaintiffs' Lead Counsel will ask the Court to approve payment of their fees of up to one-third of the Settlement Fund, which amounts to $833,333, and will seek reimbursement of their expenses in an amount of no more than $110,000 plus interest at the same rate earned by the Settlement Fund.[75] If the Court approves the maximum recoverable amount of attorneys' fees and costs, this would average $0.029 per ADS, thereby dropping the estimated average recovery per share from $0.08 to $0.051.[76] Finally, the Court's approval of the settlement is not conditioned on its approval of the fee application, and the Court's rejection of the fee application would not abrogate the settlement or give the parties grounds to disavow it.[77]

## E. Payment of Notice Costs

Plaintiffs' Lead Counsel will seek the Court's approval of reimbursement for the costs incurred in giving notice of the settlement to putative class members, administering that settlement, and distributing the settlement proceeds.[78] The parties have agreed that Lead Counsel may expend up to $100,000 from the Gross Settlement Fund to pay for the costs of notice and administration of the settlement.[79]

## F. The Release of All Claims Against the Settling Defendants

By submitting a claim, putative class members will release the Settling Defendants from all causes of action that the class members possess that relate in any way to the purchase of Rediff ADSs during the Class Period. The Settling Defendants' insurers are likewise released. In turn, the Settling Defendants release any and all representa-

---

71. *See* Settlement Notice at 20.

72. *See id.* at 18–19. *See also Maley v. Del Global Techs. Corp.,* 186 F.Supp.2d 358, 367 (S.D.N.Y. 2002) ("To warrant approval, the plan of allocation must also meet the standards by which the ... settlement was scrutinized—namely, it must be fair and adequate.") (quotation and citation omitted); *In re Gulf Oil/Cities Serv. Tender Offer Litig.,* 142 F.R.D. 588, 596 (S.D.N.Y.1992) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable. It is also reasonable to allocate more of the settlement to class members with stronger claims on the merits.").

73. *See* Settlement Notice at 18–19.

74. *See id.* at 19.

75. *See id.* at 3. The Settlement Stipulation (¶ 8) does not mention a cap on reimbursement for Lead Counsel's expenses.

76. *See* Settlement Notice at 3, 14.

77. *See* Settlement Stipulation ¶ 8(a).

78. *See id.* ¶ 9.

79. *See id.* ¶ 7.

tive plaintiffs, class members and/or their attorneys from any claims that relate to this action.

### G. The Release of Non–IPO Claims Against the Underwriters

Under the terms of the proposed settlement, plaintiffs will release the Underwriter Defendants from the non-IPO claims without receiving any monetary compensation from them.[80] However, the Underwriter Defendants are not being released from the IPO causes of action. The rationale for dismissing the Underwriter Defendants with prejudice as to the non-IPO claims is to permit Rediff to avoid paying any damages pursuant to indemnity agreements it entered into as part of its IPO underwriting.[81]

## IV. DISCUSSION

### A. The Settlement Discussions

The parties assert that the proposed settlement is the product of arms-length negotiations and there is no reason to doubt this assertion or suspect that there has been any fraud or collusion between the parties. The settling parties are represented by experienced and talented counsel that share expertise in this field and possess an extensive knowledge of the details of this case after engaging in substantial discovery. The first negotiation, which was mediated by Judge Pitman, was unsuccessful.[82] Only after discovery and an exchange of expert estimates of damages were the parties able to arrive at a settlement. Therefore, I find that the proposed settlement is the result of "serious, informed, non-collusive negotiations."[83]

### B. Certification of the Settlement Class: Rule 23(a)

#### 1. Numerosity

The numerosity requirement is satisfied here because when claims involve allegations of fraud in connection with publicly traded securities "common sense dictates that the purported plaintiff class is likely quite numerous."[84] From June 14, 2000 through April 4, 2001, 5.3 million Rediff ADSs were outstanding, and the estimated NASDAQ trading volume of those shares during that time was 32.1 million.[85] Although plaintiffs have not estimated the actual number of class members, there is little doubt based on the amount of outstanding and traded shares that the number runs into the hundreds if not thousands.[86] As such, joinder is "impracticable."[87]

#### 2. Commonality

Common issues of law and fact exist among all class members as to their non-IPO causes of action. These issues include: (1) whether defendants violated the federal securities laws; (2) whether defendants' Registration Statement contained material misstatements and omissions; (3) whether defendants otherwise made false and misleading statements during the Class Period; (4) the materiality of such misstatements and omissions and the degree of scienter of defendants with respect to each; and (5) whether the members of the Class have sustained damages and, if so, the proper measure of damages.[88] Likewise, common issues of law and fact exist among all class members as to the section 11 IPO cause of action. These issues include whether defen-

---

**80.** See id. ¶ 1(r).

**81.** See Pl. Mem. at 7 n. 8.

**82.** See *Hicks v. Stanley*, No. 01 Civ. 10071, 2005 WL 2757792, at *5 (S.D.N.Y. Oct. 24, 2005) ("A breakdown in settlement negotiations can tend to display the negotiation's arms-length and non-collusive nature.").

**83.** *In re Nasdaq Market–Makers Antitrust Litig.*, 176 F.R.D. at 102.

**84.** *Fogarazzo*, 232 F.R.D. at 182.

**85.** See Rodriguez Decl. ¶ 7.

**86.** Plaintiffs state that the available records indicate between twenty-six and two hundred institutions that purchased Rediff ADSs during the Class Period, but plaintiffs have not estimated the total number of purchasers. See Pl. Mem. at 12–13 n. 13.

**87.** Fed.R.Civ.P. 23(a)(1).

**88.** See Consolidated Amended Securities Class Action Complaint ("Compl.") ¶ 19; see also Pl. Mem. at 14–15.

dants made material misstatements and omissions with respect to alleged IPO "laddering" and undisclosed compensation in connection with Rediff's IPO, and whether the members of the Class have sustained damages and, if so, the proper measure of damages. In light of these common issues, I find that plaintiffs have satisfied the commonality requirement of Rule 23(a).

### 3. Typicality

Plaintiffs' claims are typical of the claims of the prospective class members because they arise out of the same legal theories and the same alleged course of conduct, namely, the dissemination of material misrepresentations and omissions as to Rediff's financial condition and management.[89] Therefore, plaintiffs stand in the same position—and need to offer the same proof of their claims— as other purchasers of Rediff ADSs during the Class Period. Moreover, there are no unique defenses that would overshadow the common claims and prejudice other class members.

### 4. Adequacy

Plaintiffs represent that there are no conflicts of interest among plaintiffs and any potential class member and there is no reason to think their mutual interests are not closely aligned.[90] Moreover, Lead Counsel are well qualified to represent the class adequately based on their prior experience in other class actions and their vigorous prosecution of this action as evidenced by their successfully defending against defendants'

motion to dismiss and by their ably conducting discovery both domestically and abroad.[91]

### C. Certification of the Settlement Class: Rule 23(b)(3)

### 1. Predominance

Common questions of law and fact predominate with respect to plaintiffs' garden-variety securities fraud claims in the non-IPO causes of action because the issue of defendants' liability under federal securities law is common to all class members.[92] Even if each class member were to commence an individual action, each would have to prove defendants' alleged malfeasance in order to prove liability.[93] "Where, as here, there exists a common nucleus of operative facts affecting all members, common questions unquestionably prevail."[94] With respect to the issues of reliance and transaction causation as to plaintiffs' non-IPO claims, plaintiffs assert that they can rely on the presumption of reliance established by the fraud-on-the-market doctrine.[95] As articulated by the Supreme Court in *Basic Inc. v. Levinson,* a court may presume that investors relied on "public material misrepresentations" in an "open and developed securities market."[96] During the ten-month Class Period following the IPO, 5.3 million Rediff ADSs were outstanding and the estimated trading volume of those shares was 32.1 million on the NASDAQ, an open, developed and generally efficient securities market.[97] The alleged misrepresentations indisputably were made publicly; and, in conjunction with the alleged omissions, they are material to the share price because they concern Re-

---

**89.** *See* Compl. ¶¶ 106–120.

**90.** *See* Rodriguez Decl. ¶¶ 8–10.

**91.** *See* Pl. Mem. at 18.

**92.** *See, e.g., In re Salomon Analyst Metromedia Litig.,* 236 F.R.D. 208, 218 (S.D.N.Y.2006); *In re Globalstar Sec. Litig.,* No. 01 Civ. 1748, 2004 WL 2754674, at *5 (S.D.N.Y. Dec. 1, 2004).

**93.** *See In re Blech Sec. Litig.,* 187 F.R.D. 97, 107 (S.D.N.Y.1999).

**94.** *In re Oxford Health Plans, Inc.,* 191 F.R.D. 369, 374 (S.D.N.Y.2000).

**95.** *See* Compl. ¶ 128.

**96.** 485 U.S. 224, 247, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) (quotation and citation omitted). *Accord Miles,* 471 F.3d at 42 (" 'The fraud-on-the-market doctrine ... creates a rebuttable presumption that (1) misrepresentations by an issuer affect the price of securities traded in an open market, and (2) investors rely on the market price of securities as an accurate measure of their intrinsic value.' ") (quoting *Hevesi v. Citigroup, Inc.,* 366 F.3d 70, 77 (2d Cir.2004)).

**97.** *See, e.g., Burke v. China Aviation Oil (Singapore) Corp.,* 421 F.Supp.2d 649, 653 (S.D.N.Y. 2005) (recognizing NASDAQ as an efficient market).

diff's business and growth prospects.[98] In other words, there is " 'a substantial likelihood' " that the disclosure of the misrepresentations and omissions " 'would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.' " [99] As a result, the *Basic* presumption applies to the issue of reliance. Likewise, plaintiffs are also entitled to apply the *Basic* presumption to transaction causation, which is "akin to reliance." [100] Thus, common issues as to reliance and transaction causation, with respect to the non-IPO section 10(b) and Rule 10b–5 claims, predominate for purposes of Rule 23(b)(3).

Predominance is also easily found with respect to the section 11 IPO cause of action.[101] Reliance is not an element of a section 11 claim for any purchaser who bought securities within twelve months of the registration statement.[102] The Rediff Registration Statement became effective in May 2000 and the Class period ends in April of 2001, less than twelve months later. Thus, no class member must prove reliance in order to sustain a section 11 claim.[103] Moreover, those who purchased ADSs in the initial IPO as well as those who purchased in the aftermarket have standing to bring section 11 claims.[104] As a result, the Second Circuit's determination in *Miles* that the IPO market is not efficient does not foreclose a finding that common

questions predominate for these claims.[105] Moreover, because Rediff had only one IPO, there is no issue as to whether class members must individually trace their shares to the particular IPO that allegedly had a deficient registration statement.[106]

The amount of damages suffered by each class member with respect to the non-IPO claims and the section 11 IPO claims cannot be precisely determined without an individualized inquiry. However, that variation does not preclude a finding of predominance.[107]

### 2. Superiority

Resolution of this controversy as a class action is superior to other available methods of adjudication. For most class members the amount of money at stake will be too small relative to the cost of pursuing individually filed actions. Therefore, a class member's interest in aggregating all similar claims to achieve some recovery substantially outweighs any interest in individually directing this litigation.[108] Those class members wishing to pursue their own remedies have the option of opting out of the settlement class. Because the purported class may consist of thousands of members and the average recovery per member is likely to be a modest sum, class certification is the superior method of adjudication.[109] Therefore, the proposed plaintiff class satisfies Rule 23(b)(3).

---

**98.** *See* Compl. ¶¶ 66–105.

**99.** *DeMaria v. Andersen,* 318 F.3d 170, 180 (2d Cir.2003) (quoting *TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976)).

**100.** *Lentell v. Merrill Lynch & Co.,* 396 F.3d 161, 172 (2d Cir.2005).

**101.** *See generally In re Twinlab Corp. Sec. Litig.,* 103 F.Supp.2d 193, 201 (E.D.N.Y.2000) ("Section 11 'places a relatively minimal burden on a plaintiff,' requiring simply that the plaintiff allege that he purchased the security and that the registration statement contains false or misleading statements concerning a material fact.") (quoting *Herman & MacLean v. Huddleston,* 459 U.S. 375, 381–82, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983)).

**102.** *See* 15 U.S.C. § 77k(a). *See also In re Global Crossing, Ltd. Sec. Litig.,* 313 F.Supp.2d 189, 206 (S.D.N.Y.2003).

**103.** *See* Pl. Mem. at 2–3.

**104.** *See DeMaria,* 318 F.3d at 176–77.

**105.** *See* 471 F.3d at 42–43.

**106.** *See DeMaria,* 318 F.3d at 176.

**107.** *See In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d at 139 ("Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues.").

**108.** *See Amchem Prods.,* 521 U.S. at 617, 117 S.Ct. 2231 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").

**109.** As mentioned earlier, plaintiffs estimate that the class consists of at most two hundred institutional investors, with hundreds if not thousands more individual investors. *See* Pl. Mem. at 12–13 n. 13.

## D. The Proposed Settlement Falls Within the Range of Possible Approval

At the preliminary review stage, I find that the proposed settlement is fair, reasonable and adequate, and falls within the "range of possible approval." [110] Plaintiffs' Lead Counsel consider the proposed settlement to be an acceptable outcome based on their broad experience in class litigation and securities actions, their insight into the facts of the case afforded by discovery and their assessment of the risks attendant in continuing to litigate this case. The prospect of an immediate monetary gain may be more preferable to class members than the uncertain prospect of a greater recovery some years hence.

The proposed settlement amount appears reasonable compared to the maximum possible recovery obtainable from the Settling Defendants were the case to be tried because plaintiffs would likely face serious obstacles in establishing both liability and damages. Lead Counsel assert that the Settling Defendants have both legal and factual class-wide defenses "that are supported by the discovery taken in this case." [111] Even if liability could be established, Lead Counsel claim that intervening new case law between the time this action was filed and the parties' negotiations injected uncertainty into their determination of damages: "[A]fter *Emergent Capital Inv. Mgmt. v. Stonepath Group,*

*Inc.,*[112] Dura Pharmaceuticals v. Broudo,[113] and *Lentell v. Merrill Lynch & Co.,*[114] the amount of damages, if any, that Plaintiffs could prove was a matter of serious dispute." [115] The mere fact that plaintiffs purchased securities at an artificially inflated price and then suffered damages when the price fell is legally insufficient without proof that the price decline is attributable to a corrective disclosure rather than a result of other factors such as a general business downturn.[116]

Defendants argue that the decline in the price of Rediff ADSs from a high of $19.31 shortly after the June 14, 2000 IPO to $3.58 by January 2001 occurred before any alleged corrective disclosures were made and that the largest decline in share price over the Class Period therefore must be attributed to causes other than the alleged misrepresentations and omissions.[117] According to the Complaint, the first corrective disclosure occurred in February 2001 and the second was made the following month.[118] While denying all liability, the Settling Defendants assert that the largest decline that reasonably could be attributed to these alleged corrective disclosures was the $0.33 per ADS drop after these statements were made.[119] The Settling Defendants argue that, as a result, the average recovery under the Gross Settlement Fund of $0.08 per ADS represents about twenty-four percent of the maximum recoverable damages.[120] They further argue that

---

110. *In re Nasdaq Market–Makers Antitrust Litig.,* 176 F.R.D. at 102.

111. Pl. Mem. at 8. This also indicates that plaintiffs might find it difficult to defeat a motion for summary judgment.

112. 343 F.3d 189 (2d Cir.2003).

113. 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005).

114. 396 F.3d at 161.

115. Pl. Mem. at 6.

116. *See, e.g., Dura Pharm.,* 544 U.S. at 342–45, 125 S.Ct. 1627. The Complaint states a claim for damages based in part on a theory of loss causation that the misrepresentations in Rediff's public filings caused plaintiffs to suffer damages in that "they paid higher prices for Rediff ADSs

than they would have paid had truthful disclosures been made." Compl. ¶ 7.

117. *See* Settlement Notice at 3.

118. *See* Compl. ¶¶ 106, 108.

119. *See* Settlement Notice at 3.

120. *See id. See also Grinnell Corp.,* 495 F.2d at 455 ("[T]hat a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved."). A review of securities class action settlements indicates that the median settlement recovery in 2005 was approximately three percent of plaintiffs' estimated damages. *See* Laura E. Simmons and Ellen M. Ryan of Cornerstone Research, *Post–Reform Act Securities Settlements: 2005 Review and Analysis* at 5, available at http://www.cornerstone.com/fram_res.html.

there were contemporaneous factors other than the disclosure of allegedly corrective information that caused the drop in share price so that even the $0.33 per ADS estimate is an overstatement of the recoverable damages.

After the Supreme Court decided *Dura Pharmaceuticals,* plaintiffs' experts prepared revised damage estimates of approximately $29,000,000 as against all defendants.[121] Given the Settling Defendants' defenses, plaintiffs' revised damage estimates and the costs of going to trial, Lead Counsel have concluded that in the absence of a settlement there are significant risks that plaintiffs would "recover[ ] nothing or substantially less" than the amount in the proposed settlement.[122]

In conclusion, although the Settling Defendants are likely capable of withstanding a larger judgment, there appear to be class-wide defenses to the merits of plaintiffs' case that make it uncertain—if not unlikely—that the Settling Defendants would ever be required to pay more through further litigation than they are willing to pay now. Therefore, the settlement warrants preliminary approval.

### E. The Proposed Settlement Notice Is Inadequate

█ Under the requirements of Rule 23 and the PSLRA, the proposed Settlement Notice is defective. The prominent deficiency in the proposed Notice is that it does not advise a potential claimant of the amount of its recovery. This information is undoubtedly an important factor in a class member's decision of whether to opt out of a class settlement. Although the proposed Settlement Notice provides the formula for calculating the value of an authorized claimant's

recognized claim, there is no way to predict actual payment to the claimant due to the *pro rata* plan of allotment, pursuant to which a claimant's recovery can be calculated only after all claims have been received.[123] There is potentially a wide range of recovery based on the eventual number of claims and corresponding total amount of recognized claims. For example, if the total amount of recognized claims equals the Net Settlement Fund, then after *pro rata* allocation a claimant will receive an actual recovery equal to its recognized claim. However, a total amount of recognized claims amounting to $29,000,000—in line with plaintiffs' revised damages estimate—would dwarf the Net Settlement Fund, resulting in a claimant receiving only a small percentage of its recognized claim. Given such uncertainty, it will be difficult, if not impossible, for class members to make adequately informed decisions because the Settlement Notice does not provide any estimate as to the range of actual recoveries on a recognized claim.[124] Therefore, the proposed Settlement Notice is deficient and cannot be approved until it is revised to provide (to the extent possible) more adequate guidance as to the likely range of actual payments.

### V. CONCLUSION

For the reasons set forth herein, plaintiffs' motion is granted. Accordingly, it is hereby ORDERED that:

1. The proposed settlement class is certified consistent with the settling parties' proposed class definition;

2. The proposed settlement is preliminarily approved; and

---

121. *See* Pl. Mem. at 6 n. 7. The damages estimate in footnote seven of plaintiffs' memorandum is mislabeled as an estimate of non-IPO claims damages only, but the $29,000,000 figure is in fact plaintiffs' total damages estimate for all claims, including the IPO claims. *See id.* at 4 n. 4; *see also* Letter from Robert R. Rodriguez, counsel for Plaintiffs, to the Court, dated February 23, 2007 (correcting the mistake in footnote seven and confirming the accuracy of footnote four, *i.e.,* that the damages estimate is the aggregate estimate for all claims).

122. Settlement Notice at 3.

123. The Settlement Notice simply states: "Each Authorized Claimant shall be allocated a *pro rata* share of the Net Settlement Fund based on his, her or its Recognized Claim as compared to the total Recognized Claims of all Authorized Claimants." Settlement Notice at 21.

124. The proposed Settlement Notice states: "It is unlikely that you will get a payment for all of your Recognized Claim." *Id.* at 12.

3. A conference is scheduled for March 16, 2007, at 5:00 P.M., in Courtroom 15C, for purposes of (a) making final determinations as to the form, substance and program of notice, and (b) scheduling a Rule 23 fairness hearing. The settling parties are hereby directed to submit on or before March 9, 2007, a revised proposed class settlement notice that is consistent with this Opinion.

SO ORDERED: