Russell **DOVER,** Jonathan **Stone,** Cody **Rank,** and Suzette **Perry,** on behalf of themselves and all others similarly situated, Plaintiffs,

v.

**BRITISH AIRWAYS, PLC (UK), Defendant.**

**12 CV 5567 (RJD) (CLP)**

United States District Court, E.D. New York.

Filed 03/31/2017

David S. Stellings, Douglas Ian Cuthbertson, Jason Louis Lichtman, Nicholas Robert Diamand, Lieff Cabraser Heimann & Bernstein, LLP, New York, NY, Mark Schlachet, Law Offices of Mark Schlachet, Cleveland, OH, Clive Zietman, Daniel Loblowitz, Fiona Stewart, Stewarts Law, LLP, London, UK, for Plaintiffs.

Richard Francis Hans, Colleen Michelle Gulliver, Daniel Connor Harkins, David Victor Sack, Keara M. Gordon, Timothy H. Birnbaum, DLA Piper LLP, New York, NY, for Defendant.

## MEMORANDUM & ORDER

DEARIE, District Judge

In this putative class action, Plaintiffs, four members of the Executive Club, British Airways' frequent flyer program, allege that the airline breached its frequent flyer contract ("the Contract") by imposing impermissible fuel surcharges on frequent flyer reward flights. Plaintiffs now move for class certification. See ECF No. 207 ("Mot."); ECF No. 208 ("Opp'n"). As explained below, with a minor modification of Plaintiffs' proposed class definition, the motion is granted.

## BACKGROUND

Under the Contract, Executive Club members accumulate points called "Avios" in exchange for flying with British Airways, staying in certain hotels, or renting cars. These frequent flyer points may be redeemed for reward flights on British Airways.

The Contract provides that when a frequent flyer redeems his or her points for a reward flight, British Airways may impose certain additional charges, fees, and taxes. Among these are the fuel surcharges at issue in this lawsuit. The Contract states in relevant part:

> Members will be liable for all taxes and other charges associated with Reward travel on British Airways or a Service Partner airline, including without limitation, airport departure tax, custom fines, immigration fees, airport charges, customer user fees, <u>fuel surcharges</u>, agricultural inspection fees, security and insurance surcharge or other incidental fees or taxes charged by any person or relevant authority or body . . . .

See ECF No. 209-8 ("Contract"), at § 13.14 (emphasis added).

The parties agree that the Contract permits British Airways to impose a fuel surcharge. The Contract does not, however, define the term "fuel surcharges." Although not necessarily binding on future rulings, the Court held in ruling on British Airways' motion to dismiss that "the plain meaning of the term 'fuel surcharge' is a supplemental charge that is reasonably related to or based upon the cost or price of fuel" and that "the typical consumer would consider a fuel surcharge to be an added charge imposed by an airline in order to defray rising fuel costs." ECF No. 52 ("MTD Order"), at 9.

Plaintiffs' theory is that the Contract required that the fuel surcharges British Airways imposed, referred to internally as "YQ charges," genuinely compensate for fluctuations in the fuel market. Plaintiffs argue, however, that in setting the YQ charge throughout the class period, British Airways relied on a factor not substantively or temporally relevant to the actual cost or price of fuel: British Airways' cost of fuel in 2003–2004. According to Plaintiffs, British Airways

used the YQ charge as a way to recover the difference between its present fuel costs and its fuel costs in 2003–2004. In Plaintiffs' view, setting the amount of the YQ charge based on the cost of fuel in an arbitrary year is irrelevant and contractually impermissible, and as a result of this inappropriate baseline, British Airways' breached the Contract.

Since 2004, when the YQ charge was introduced, it has taken several different forms. Prior to the class period, British Airways imposed uniform YQ charges on all flights. Subsequently, however, British Airways began imposing different rates for short and long distance flights. After the class period began, in 2007, British Airways began setting different YQ charges for long distance flights of fewer than 9 hours and long distance flights of greater than 9 hours. In 2008, British Airways began charging different rates depending on the class of service and the point of sale (e.g. the YQ charge could be substantially higher for a customer in New York buying a round trip ticket from New York to London than for a customer who purchased the same ticket in London).

Plaintiffs now move to certify the following class:

All members of the British Airways Executive Club who redeemed frequent flier miles for an award ticket from November 9, 2006 through April 17, 2013 and who paid a BA–imposed "fuel surcharge," so long as that member provided British Airways with a valid United States address at the time of booking. This class excludes: (1) members who redeemed frequent flier miles exclusively using what British Airways termed its "Cash + Avios" option; (2) any judge to whom this case is assigned, along with his or her staff; (3) British Airways officers, directors, employees, as well as outside counsel in this litigation, and; (4) immediate family of any individual excluded by 2 or 3.

Based on records kept in a British Airways database, Plaintiffs estimate that the class includes 168,259 people. The class is represented by four named plaintiffs: Russell Dover, Suzette Perry, Cody Rank, and Henry Horsey. Each of the named plaintiffs is a member of British Airways' frequent flyer program who paid YQ charges when he or she redeemed points for reward flights during the class period.

## LEGAL STANDARD

"A district court may only certify a class if it is satisfied, after a rigorous analysis, that the requirements of Rule 23 are met." In re Am. Int'l Grp., Inc. Secs. Litig., 689 F.3d 229, 238 (2d Cir. 2012) (quotation marks and citation omitted). In order to certify a class, plaintiffs must demonstrate that the proposed class meets the requirements of Federal Rule of Civil Procedure 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. In addition, plaintiffs must show that the proposed class satisfies the requirements of at least one of the subsections of Fed. R. Civ. P. 23(b). Plaintiffs seek certification under Rule 23(b)(3), which provides that a class action may be brought where the Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In addition to these requirements, the Second Circuit "recognize[s] an implied requirement of ascertainability in Rule 23." Brecher v. Republic of Argentina, 806 F.3d 22, 24 (2d Cir. 2015) (internal quotation marks and citations omitted). That is, it must be "feasible for the court to determine whether a particular individual is a member [of the class]." Id.

The Court "must resolve material factual disputes relevant to each Rule 23 requirement," and must find that each requirement is "established by at least a preponderance of the evidence." In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 117 (2d Cir. 2013).

## DISCUSSION

### A. Rule 23(a)

#### 1. Numerosity

Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of

all members is impracticable." Fed. R. Civ. P. 23(a)(1). The term "impracticable" as used in Rule 23(a)(1), "is not to be confused with impossible. Rule 23(a)(1) only requires that, in the absence of a class action, joinder would be 'difficult' or 'inconvenient.'" Steinberg v. Nationwide Mut. Ins. Co., 224 F.R.D. 67, 72 (E.D.N.Y. 2004) (citation omitted). "[N]umerosity is presumed at a level of 40 members ..." Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995) (citation omitted).

█ Plaintiffs estimate that the proposed class contains 168,259 members—far more than the 40 members at which numerosity is ordinarily presumed. See id. Plaintiffs' estimate is based on a review of a database maintained by British Airways of the members of its frequent flyer program. British Airways does not contest this estimate, instead arguing that Plaintiffs cannot establish numerosity because it is "speculation" to conclude that the YQ charges paid by these class members were not permitted by the Contract. See Opp'n at 10–11. The merits of Plaintiffs' case are separate, however, from whether the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); see also In re Initial Pub. Offerings Secs. Litig., 471 F.3d 24, 41 (2d Cir. 2006) ("[A] district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement" in addressing a motion for class certification). Because joinder of the individual members of Plaintiffs' proposed class would be, at a minimum, impracticable, the proposed class satisfies the numerosity requirement.

### 2. Commonality

█ Under Rule 23(a)(2) plaintiffs must show that "there are questions of law or fact common to the class." Fed. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury" and that there is "a common contention" among the class "that is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal–Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349–50, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011). The class members' claims "need not be identical for them to be common; rather, Rule 23(a)(2) simply requires that there be issues whose resolution will affect all or a significant number of the putative class members." Johnson v. Nextel Commc'ns Inc., 780 F.3d 128, 137 (2d Cir. 2015).

█ British Airways argues that Plaintiffs cannot satisfy the commonality requirement because the YQ charges it imposed over the class period varied substantially in structure and amount. Specifically, British Airways contends that the YQ charges changed 15 times over the class period, that those changes were based on varying economic circumstances and other factors, and that those changes did not always affect reward flights uniformly. As a result, British Airways concludes that Plaintiffs cannot show that "the class members have suffered the same injury." Wal–Mart, 564 U.S. at 349, 131 S.Ct. 2541.

British Airways' argument ignores, however, one common question that is central to Plaintiffs' case and undisputedly capable of common resolution: the proper interpretation of the term "fuel surcharges" in the Contract. See Steinberg v. Nationwide Mut. Ins. Co., 224 F.R.D. 67, 74 (E.D.N.Y. 2004) ("'[C]laims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such.'" (internal quotation marks and citation omitted)). As British Airways' English law expert admitted (and the Court's ruling on the motion to dismiss concluded), the phrase "fuel surcharges" in the Contract has a uniform meaning that did not vary throughout the class period. Thus this is not a case in which Plaintiffs' claims "require examination of individual contract language." See U.S. Foodservice, 729 F.3d at 124 (distinguishing cases denying class certification for breach of contract claims where variations in contract language or other agreements between the parties required individualized inquiries). Because Plaintiffs have shown the existence of a common question capable of a common answer, Plaintiffs have satisfied the

commonality requirement.[1] See Wal–Mart, 564 U.S. at 359, 131 S.Ct. 2541 (noting that to satisfy the commonality requirement, "even a single common question will do ...." (internal quotation marks, citations, and alterations omitted)).

### 3. Typicality

 Under Rule 23(a)(3), plaintiffs must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class ...." Fed. R. Civ. P. 23(a)(3). Typicality is satisfied when the named plaintiffs bring claims for "the same type of injury under the same legal theory as the rest of the class." Marshall v. Deutsche Post DHL, No. 13-cv-1471 (RJD), 2015 WL 5560541, at *3 (E.D.N.Y. Sept. 21, 2015) (citing Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 252 (2d Cir. 2011)). The typicality requirement ensures that " 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.' " Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997) (alteration in original) (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 n.13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)).

 British Airways does not contest that the named Plaintiffs' claims are typical of the claims of the class. In the interests of completeness, however, the Court observes that this requirement is satisfied as well. All four named Plaintiffs, Dover, Horsey, Rank, and Perry, allege as does the class, that British Airways breached the Contract by imposing charges that were not genuine fuel surcharges within the meaning of the Contract. Thus, the typicality requirement is satisfied.

### 4. Adequacy

 Rule 23(a)(4) requires plaintiffs to show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). " 'Adequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members.' " In re Literary Works in Elec. Databases Copyright Litig., 654 F.3d 242, 249 (2d Cir. 2011) (quoting Denney v. Deutsche Bank AG, 443 F.3d 253, 268 (2d Cir. 2006)). "To judge the adequacy of representation, courts may consider the honesty and trustworthiness of the named plaintiff." Savino v. Comput. Credit. Inc. 164 F.3d 81, 87 (2d Cir. 1998) (citations omitted); see also Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990) ("[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." (citations omitted)).

 British Airways argues that Plaintiffs' class representatives are inadequate because they did not comply with their discovery obligations, contradicted allegations in the complaint, and lack credibility. In support of these accusations, British Airways asserts that three of the class representatives, Dover, Perry, and Horsey, made inadequate document productions or, in Perry's case, falsely testified about preserving relevant documents when she had, in fact, deleted them. British Airways also suggests that the class representatives have individual credibility issues like Dover's "gam[ing] the system" to obtain frequent flyer miles without actually spending money or Rank's deposition testimony concerning possible prior criminal conduct. See Opp'n at 17.

First, even though British Airways is correct that three of the class representatives'

---

1. The variations in the YQ charges that British Airways points to are relevant, just not to the narrow question of whether there are questions of law or fact common to the class as a whole. Instead these arguments bear directly on the central question posed by this motion: do the questions of law or fact common to the class predominate over individual questions? See Fed. R. Civ. P. 23(b)(3); see also 1 William B. Rubenstein, et al., Newberg on Class Actions § 3.27 (5th ed. 2011) ("Rule 23(b)(3) most obviously builds on Rule 23(a)(2) as it utilizes commonality itself as the measuring stick for certification ...."). The Court will address these arguments later in analyzing the predominance requirement in Rule 23(b)(3).

initial document productions were lacking, Plaintiffs complied with their discovery obligations by supplementing those initial productions with fulsome responses. This is true of Perry as well, who Plaintiffs acknowledge deleted numerous emails in early 2013, but subsequently restored and produced all relevant emails. Thus, this is not a case in which the class representatives are inadequate because they have failed to "live up to [their] fiduciary obligation[s]" to participate in discovery. See Rocco v. Nam Tai Elecs., Inc., 245 F.R.D. 131, 134 n.1, 137 (S.D.N.Y. 2007) (finding the named plaintiff inadequate where he refused to produce documents until a court order compelled it and caused the discovery deadline to be extended for four additional months); McDaniel v. Cnty. of Schenectady, No. 1:04 CV 757 GLS/RFT, 2005 WL 1745566, at *3 (N.D.N.Y. July 21, 2005) (concluding the named plaintiff was inadequate where he repeatedly refused to appear for a deposition despite court orders); see also Enea v. Bloomberg, L.P., No. 12 Civ. 4656 (GBD) (FM), 2014 WL 1044027, at *6 (S.D.N.Y. Mar. 17, 2014) (holding that supplemental document productions cured any deficiencies in discovery and did not "demonstrate that the proposed class representatives do not have an interest in pursuing the claims of the class, or that any proposed class representative has interests antagonistic to other class members" (citing Literary Works, 654 F.3d at 249)).

British Airways' remaining arguments, that the class representatives contradicted allegations in the complaint and have significant credibility issues, do not undermine their adequacy as class representatives either. First, British Airways overstates the alleged contradictions in the class representatives' deposition testimony. Far from contradicting the complaint, the class representatives' depositions simply reflect the unremarkable fact that, as in most cases, Plaintiffs' class representatives know little about the technical and legal specifics of their cases. Cf. Phillips v. Asset Acceptance, LLC, 736 F.3d 1076, 1080 (7th Cir. 2013) (Posner, J.) (noting that questioning a named plaintiff's adequacy based on minor variations between her claim and the claims of some class members "is to be un-

realistic about the role of class representatives . . . ."). Moreover, the class representatives' deposition testimony demonstrates that this is not a case in which " 'the class representatives have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class . . . .' " Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp., 222 F.3d 52, 61 (2d Cir. 2000) (quoting Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1077–78 (2d Cir. 1995)).

Second, the issues with Plaintiffs' class representatives' credibility—Dover's "manufactured spending" to get extra frequent flyer points, Rank's prior minor criminal offense, and further alleged contradictions between deposition testimony and statements in court filings—have innocent explanations, are irrelevant, or are simply too far removed from the issues in this case to render the named plaintiffs inadequate. See Rocco, 245 F.R.D. at 137 ("[Plaintiff's] criminal history will not be considered as evidence of his inadequacy to represent this class."); In re NYSE Specialists Sec. Litig., 240 F.R.D. 128, 144 (S.D.N.Y. 2007) (noting that "considerations of trustworthiness and credibility" in assessing adequacy of representation "are not without limitation, however, but instead are restricted to their relevance to issues in the litigation.").

Accordingly, Plaintiffs have demonstrated that the class representatives will fairly and adequately protect the interests of the class.

## B. Rule 23(b)

### 1. Predominance

The central question in this motion is whether "questions of law or fact common to class members predominate over any questions affecting only individual members." See Fed. R. Civ. P. 23(b)(3). The predominance inquiry is designed to ensure that "proposed classes are sufficiently cohesive to warrant adjudication by representation." Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010). Unlike the commonality inquiry in Rule 23(a) which only requires that common issues exist, the Rule 23(b)(3) inquiry re-

quires that common issues be more prevalent than individual issues. See 1 William B. Rubenstein, et al., Newberg on Class Actions § 3.27 (5th ed. 2012) ("Rule 23(b)(3) therefore does something that Rule 23(a)(2) alone does not: it compares the quality of the common questions to those of the noncommon questions."). Thus, "the predominance criterion is far more demanding" than the commonality inquiry. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 624, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

"An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, classwide proof." Tyson Foods, Inc. v. Bouaphakeo, ―― U.S. ――, 136 S.Ct. 1036, 1045, 194 L.Ed.2d 124 (2016): see also Roach v. T.L. Cannon Corp., 778 F.3d 401, 405 (2d. Cir. 2015) ("Predominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."). Although "the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification under Rule 23(b)(3)," Roach, 778 F.3d at 405 (quotation marks and citations omitted), "a model for determining classwide damages relied upon to certify a class under Rule 23(b)(3) must actually measure damages that result from the class's asserted theory of injury .... " Id. at 407 (citing Comcast Corp. v. Behrend, 569 U.S. 27, 133 S.Ct. 1426, 1433, 185 L.Ed.2d 515 (2013)).

As the Court explained earlier in addressing the commonality requirement, there is at least one common question in this case: the meaning of the phrase "fuel surcharges" in the Contract. In Plaintiffs' view, the remaining legal and factual questions in the case are common to the class as well and predominate over any individualized questions: (1) whether British Airways' YQ charges were, in fact, "fuel surcharges" within the meaning of the Contract, (2) whether the resulting breach of contract impacted the entire class; and (3) the amount of damages the class suffered as a result.

British Airways argues that Plaintiffs cannot answer these questions using common proof because its YQ charges were set based on a variety of different factors and affected class members differently. The fuel surcharge committee, which British Airways tasked with setting its YQ charges, met 47 times and changed the YQ charge 15 times during the class period. At these meetings, the committee considered a number of different factors such as the cost of fuel, the price of fuel, British Airways' fuel hedging positions, competitor actions, consumer perceptions, and fluctuations in currency exchanges. The structure of the YQ charge also varied throughout the class period; at different times during the class period the amount of a YQ charge varied based on whether the reward flight was a long-haul or short-haul, or where the ticket was purchased. British Airways argues that these variations, as well as two defenses—the voluntary payment doctrine and waiver—preclude a finding of predominance.

Plaintiffs' central contention, however, is that British Airways breached the Contract during the entire class period because its YQ charges were not, in fact, genuine fuel surcharges as required by the Contract. This contention is common to the class and is the predominant question in this lawsuit. Plaintiffs plan to use generalized proof to show that: (1) at all times, British Airways relied on an irrelevant and impermissible factor—British Airways' total cost of fuel in 2003–2004—in setting its YQ charges, (2) throughout the class period, British Airways' YQ charges were not, as a matter of economics, genuine fuel surcharges because they do not bear a "close relationship" to the cost or price of fuel, and (3) as a result, British Airways breached the Contract (4) causing damages to the class of $143 to $161 million. See ECF No. 207-8 ("Arnold Rep."), at 31–45, 66–67.

This contention is "central to the validity" of Plaintiffs' claims and is capable of resolution "in one stroke" without delving into the

details of individual fuel surcharge committee meetings or the structure of the YQ charge at various times. See Wal–Mart, 564 U.S. at 350, 131 S.Ct. 2541; see also Dial Corp. v. News Corp., 314 F.R.D. 108, 120 (S.D.N.Y. 2015) (" 'An issue central to the validity of each one of the claims in a class action, if it can be resolved in one stroke, can justify class treatment.' " (internal quotation marks omitted) (quoting Butler v. Sears. Roebuck & Co., 727 F.3d 796, 801 (7th Cir. 2013)). On the one hand, if the proper interpretation of the term "fuel surcharges" in the Contract permits British Airways to impose a fuel surcharge based on the 2003–2004 baseline figure, and/or allows British Airways to impose charges that are not closely related to the cost or price of fuel, then Plaintiffs' claims fall together. On the other hand, if the Contract does not permit such actions and Plaintiffs are successful in proving they took place, then Plaintiffs' claims prevail together. Thus, even if British Airways is " 'superficially successful at deconstructing Plaintiffs' proposed method of proof so as to make it appear uniquely complex and incapable of common proof, it is ultimately an exaggeration and insufficient to defeat Plaintiffs' claim of predominance.' " See In re Delta/AirTran Baggage Fee Antitrust Litig., No. 1:09–md–2089–TCB, 2015 WL 5258757, at *8 (N.D. Ga. Aug. 5, 2015) (quoting Midwestern Mach. v. Nw. Airlines, Inc., 211 F.R.D. 562, 571 (D. Minn. 2001)).

British Airways' argument that two defenses, the voluntary payment doctrine and waiver, defeat predominance is unavailing as well. First, both sides agree that English law, which governs the Contract, does not recognize the voluntary payment doctrine, and British Airways' attempts to argue that it applies to this case because of a different contract that may not be governed by English law are unpersuasive. Second, British Airways argues that some number of class members waived " 'any and all claims' " that they " 'ever had, now has, or hereafter can, shall or may have' " against British Airways in the settlement of In re International Air Transportation Surcharge Antitrust Litigation, No. 06–md–1793–CRB (N.D. Cal.). See Opp'n at 27–28 (quoting the release). The applicability of this release does not, however-

er, destroy predominance either. See In re Cablevision Consumer Litig., No. 10-cv-4992, 2014 WL 1330546, at *11 (E.D.N.Y. Mar. 31, 2014) (" '[T]he fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones.' " (quoting In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 138 (2d Cir. 2001), superseded by statute, Fed. R. Civ. P. 23(g), as recognized in Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79, 238 F.R.D. 82, 100 (S.D.N.Y. 2006)). At best, the release applies only to class members who paid long-haul fuel surcharges to British Airways between August 11, 2004 and March 23, 2006, six months before the class period in this case began. See In re Int'l Air Transp. Surcharge Antitrust Litig., No. 06–md–1793 CRB, 2011 WL 6337625, at *1 (N.D. Cal. Dec. 19, 2011) (defining the class certified in that case). Moreover, determining whether a particular class member released his or her claims in the Air Transportation Surcharge case should be mechanical, requiring little more than a review of records retained by British Airways.

This is not to say that individual issues will not arise in this case. On the contrary, the parties agree that individualized proof will be necessary in determining the amount of damages each class member suffered. These individualized inquiries do not, however, defeat predominance. See Roach, 778 F.3d at 405. As a result, Plaintiffs have satisfied the predominance requirement.

*2. Superiority*

As stated above, Rule 23(b) also requires plaintiffs to show "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3). " 'The greater the number of individual issues, the less likely superiority can be established.' " Cohn v. Mass. Mut. Life Ins. Co., 189 F.R.D. 209, 219 (D. Conn. 1999) (alteration omitted) (quoting Castano v. Am. Tobacco Co., 84 F.3d 734, 745 n. 19 (5th Cir. 1996). Further, "the need for mini-trials on the resolution of each class member's claims and the applicability of affirmative defenses detracts from

the superiority of the class action device .…." Spagnola v. Chubb Corp., 264 F.R.D. 76, 99 (S.D.N.Y. 2010); see also 2 Newberg § 4:64 ("[T]he superiority determination involves, either explicitly or implicitly, a comparison of the class action—representative litigation—as a procedural mechanism to available alternatives. These alternatives include multiple individual actions, joinder of claims, the use of test cases, and administrative proceedings, among others.").

British Airways does not contest Plaintiffs' satisfaction of the superiority requirement, which the Court independently finds to be satisfied largely for the reasons explained in the predominance section of this opinion.

## C. Ascertainability

■ The Second Circuit has recognized an " 'implied requirement of ascertainability' in Rule 23 of the Federal Rules of Civil Procedure." See Brecher, 806 F.3d at 24 (quoting Pub. Offerings, 471 F.3d at 30). "[T]he touchstone of ascertainability is whether the class is 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.' " Id. (quoting 7A Wright & Miller, Federal Practice & Procedure § 1760 (3d ed. 1998)). A class is ascertainable if it can be objectively defined in an administratively feasible manner " 'and when identifying its members would not require a mini-hearing on the merits of each case.' " See id. at 24–25 (quoting Charron v. Pinnacle Grp. N.Y. LLC, 269 F.R.D. 221, 229 (S.D.N.Y. 2010)).

■ Setting aside arguments the Court has already rejected in addressing the other requirements of Rule 23, British Airways argues that Plaintiffs' proposed class is not ascertainable for two reasons: (1) it is "is impossible to ascertain the size, scope and geographic reach of this class" given the class definition's inclusion of all individuals who provided British Airways with " 'a valid United States address at the time of booking .…,' " see Opp'n at 29 (quoting the class definition); and (2) the class as currently defined may include foreign residents, which would raise burdensome choice of law issues.

British Airways' first argument, that it is impossible to ascertain the size and scope of Plaintiffs' proposed class, is belied by British Airways' own database, which tracks not only the names of all members of its frequent flyer program but also their addresses, and other relevant information. Thus, there would be no need for mini-hearings or other information to determine whether or not that individual falls within the class definition. See Byrd v. Aaron's Inc., 784 F.3d 154, 169 (3d Cir. 2015) (concluding that the ascertainability requirement was satisfied where the defendant's own records allowed class members to be identified). British Airways' second argument, that the class as currently defined may include foreign residents who may simply have given a business or vacation address in the United States at the time of booking, is well taken, but easily addressed. As Plaintiffs' state in their reply, they have no objection to modifying the class definition to define the class as including only United States resident members of British Airways' frequent flyer program. See ECF No. 213 ("Reply"), at 6 n.5. With this minor modification, the Court concludes that Plaintiffs' proposed class is readily ascertainable.

## CONCLUSION

As explained above, the Court grants Plaintiffs' class certification motion with one minor modification to the proposed class definition. Accordingly, the Court certifies the following class:

All United States resident members of British Airways' Executive Club who redeemed frequent flier miles for an award ticket from November 9, 2006 through April 17, 2013 and who paid a BA–imposed 'fuel surcharge,' so long as that United States resident member provided British Airways with a valid United States address at the time of booking. This class excludes: (1) members who redeemed frequent flier miles exclusively using what British Airways terminated its "Cash + Avios" option; (2) any judge to whom this case is assigned, along with his or her staff; (3) British Airways Officers, directors, employees, as well as outside counsel in this litigation, and; (4) immediate family of any individual excluded by 2 or 3.

Based on the work counsel has performed in pursuing this action to date, their experience in handling class actions generally, and the fairness and adequacy of their representation, the Court appoints Lieff Cabraser Heimann & Bernstein LLP to serve as class counsel. See Fed. R. Civ. P. 23(g).

**SO ORDERED.**